[Civ. No. 26523. First Dist., Div. Three. Mar. 9, 1971.]

In re PAUL T. et al., Persons Coming Under the Juvenile Court Law.
ROBERT E. NINO, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
PAUL T. et al., Defendants and Appellants.

**COUNSEL**

Joseph E. Silva, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CALDECOTT, J.**—On October 24, 1968, a petition was filed in the Santa Clara County Superior Court, sitting as a juvenile court, alleging that appellants, Paul and Peter T., persons under 21 years of age,[1] came within the provisions of section 602 of the Welfare and Institutions Code.[2] The

[1] Appellants are twins born January 4, 1956.
[2] All references are to the Welfare and Institutions Code unless otherwise noted.

petition alleged appellants had participated in the entry of a building of Santa Clara Honda Sales, with intent to commit theft therein, in violation of Penal Code section 459 (burglary).

A detention hearing was held on October 25, 1968, after notice to appellants and their mother, and after they had been informed of their right to be represented at every stage of the proceedings by counsel. The public defender was appointed to represent them.

The first session of the jurisdictional hearing on the petition was held on November 14. The hearing was continued to December 5, 1968, when appellants were represented by counsel, and accompanied by their parents. The allegations of the petition were denied. After hearing witnesses and taking evidence, the court found the allegations of the petition to be true as to each appellant, and that each appellant was a person described by section 602.

The disposition hearing was also held on December 5, when the probation officer's report was read and considered. The appellants were committed to the custody of the probation officer for relative or foster home placement.

On October 22, Thomas Ken Shigemasa, a San Jose police officer, was on patrol in a marked police vehicle with his partner. About 8:30 p.m., he observed a mini-bike travelling at about 25 miles an hour. There were no license plates or lights on the bike. The driver was appellant Paul T. The police vehicle turned on its red light and stopped the bike.

The police officer got out of his vehicle and immediately asked Paul who owned the bike. The question was asked preparatory to issuing a traffic citation for riding a motor bike without a license plate and front lights. Paul replied, "I swiped it." The officer immediately informed Paul that he was under arrest for possession of stolen property and auto theft, and he advised him of his constitutional rights. He and his partner took Paul into custody and drove towards the police station. As they were driving, Paul pointed out a shop, Santa Clara Honda, from which the bike could have been taken.

At trial, appellants' mother testified that on the Sunday previous to the arrest she had seen both Peter and Paul operating mini-bikes in their backyard. Since the bikes did not belong to the boys, she told them to take the bikes back where they came from. She did not ask how they had obtained the bikes, and the boys did not say anything about the owner.

Sam Woods, a shop foreman at the Santa Clara Honda Motorcycle Shop in San Jose, testified that on the Saturday preceding the arrest he observed

that the back door was open to the interior courtyard between the shop and the parts and sales area. The courtyard was enclosed on three sides by Santa Clara Honda and on the fourth side by S & W Equipment. He found a brown corduroy jacket lying inside the courtyard. Although he did not take an itemized account at that time, he was aware that the shop had received 10 Honda Mini-Trail bikes the day before, and he observed that there were no longer that many bikes present. It developed that two bikes were missing; they were later recovered. As far as Woods knew, neither of the appellants had ever been granted permission to enter the premises of the shop.

Appellants' mother further testified that both appellants and their brother had corduroy jackets similar to the one found at the Santa Clara shop. The mother could not state with certainty if any of the jackets were missing.

Gilbert Millington, a deputy probation officer, interviewed each appellant on November 7, 1968. He informed each of the minors that he worked for the Juvenile Probation Department, and each minor was advised of his constitutional rights. The interviews took place in the living room of appellants' home in the presence of their mother, who participated in the conversations. Appellants' attorney was not present and had not been informed of the interviews. Appellants had already appeared at the detention hearing and were at home pending the jurisdictional hearing. Millington stated, "[T]he nature of the conservation [sic] was the discussion of the offense and also pertinent information regarding the total situation for the social study." Later, at the jurisdictional hearing, Millington testified as to the statements of the appellants concerning the offense, which he had obtained at the interviews. Appellants' objection to the testimony was overruled and the motion to strike the testimony was denied.

Appellants contend that the corpus delicti of the burglary was not independently established, to permit the admission into evidence of the extrajudicial statements of the appellants. ■ Unless the corpus delicti is established by independent evidence, extrajudicial admissions or confessions of a criminal accused are inadmissible. (*People* v. *Quarez,* 196 Cal. 404, 409 [238 P. 363]; *People* v. *Dick,* 37 Cal. 277, 281.) The petition alleged that appellants had committed the crime of burglary. (Pen. Code, § 459.) In a case similar to the present one, *People* v. *Biehler,* 215 Cal.App.2d 400 at page 403 [30 Cal.Rptr. 199], the court said: "Initially, defendant . . . contends that the evidence is insufficient to establish the corpus delicti of burglary and that therefore his extrajudicial statements were inadmissible. The . . . evidence establishes that someone broke into and entered the shop and justifies the inference that it was with the intent to commit theft. In *People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12], the

court points out at page 545, that to authorize the reception in evidence of confessions and extrajudicial statements of a defendant '. . . the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.] It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citations.] Direct or positive evidence is not essential [citations], nor is it necessary at this point to connect the defendant with the perpetration of the offense [citations].' Accord: *People* v. *Nankervis,* 183 Cal.App.2d 744, 749 [7 Cal.Rptr. 263]."

■ There was sufficient evidence in this case to permit inferences that (1) the courtyard had been entered by coming through a building (although there was evidence that access could also be had by coming over a building), and (2) two Honda mini-bikes were wrongfully missing. The evidence was sufficient to infer an entry had been made with an intent to commit larceny. There were other possible inferences that an employee other than Woods had taken one of the mini-bikes home with him with permission, but it is unnecessary, under the principles previously noted, that all innocent inferences be excluded by the evidence. In addition, Paul was arrested with the stolen property in his possession. The evidence was sufficient to establish at least a prima facie case of burglary.

Appellants object to the admission of the testimony of Officer Shigemasa that (1) Paul said, "I swiped it"; and, (2) Paul indicated the building from which the mini-bike could have been taken. There is no doubt that both actions of Paul, his speaking and nonverbal conduct, may constitute statements. (See Evid. Code, § 225.)

■ At trial, no objection was taken to the officer's testimony as to the nonverbal conduct of Paul. Appellants cannot now object to this evidence. (See Evid. Code, § 353.)

■ Unquestionably Paul was in custody of the police officers. Custody occurs if the accused is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived. (*People* v. *Arnold,* 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].) At the time Paul said, "I swiped it," he had simply been stopped for minor traffic violations and merely asked the name of the owner of the mini-bike. The arresting officer was unaware of the theft, and Paul was not a suspect. Paul's statement was voluntary, spontaneous and unsolicited. Voluntary statements are admissible into evidence. (*Miranda* v. *Arizona,* 384 U.S. 436, 478 [16 L.Ed.2d 694, 725-726, 86 S.Ct. 1602, 10 A.L.R.3d 974]; see also *People* v. *Dorado,* 62 Cal.2d 338, 354 [42 Cal.Rptr. 169, 398 P.2d 361].)

■ Appellants contend that the court erred in admitting testimony of Deputy Probation Officer Millington at the jurisdictional hearing, concerning appellants' statements relative to the offense. Appellants and their mother were advised of their constitutional rights and stated that they understood them. The question is raised, however, as to whether there was an intelligent, knowing and voluntary waiver of these constitutional rights.

The accusatory stage of the proceedings had been reached, counsel had been appointed to represent the appellants, and the interview was instigated by the probation officer. ■ In *People* v. *Isby,* 267 Cal.App. 2d 484, 494-495 [73 Cal.Rptr. 294], the court stated: "It must be concluded from our reading of *Massiah* and *Miranda* that the Supreme Court has distinguished two distinct constitutionally proportioned rights. The first right is that an accused must be advised of his right to counsel when the accusatory stage of the criminal process has been reached, and the second right is that after a criminal charge has been filed against a defendant and he has counsel, he may not be subjected to an interrogation instigated by law enforcement officers for the purpose of eliciting incriminatory statements without effective aid of his counsel. In the case at bench, the criminal charge had been filed, defendant arraigned and counsel appointed to represent him. From this factual statement it can be concluded that defendant had been advised of his right to counsel and he had elected to be represented by counsel rather than represent himself. Thereafter defendant was entitled to the effective aid of counsel at any interrogation instigated by the law enforcement officers. The incriminatory statements herein were obtained without such aid and their admission in evidence was constitutionally proportioned error."

The *Isby* case did not involve a juvenile court proceeding. Thus the question is raised as to whether *Isby* is applicable to the present case. *In re Gault,* 387 U.S. 1, 55 [18 L.Ed.2d 527, 561, 87 S.Ct. 1428], emphasized the necessity that basic requirements of due process and fairness be satisfied in a juvenile court proceeding. This decision would imply that counsel must be present, in a case such as this, when an admission is made. ■ The court noted (at p. 55) an exception to the requirement, stating, "If counsel was not present for some *permissible reason* when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." (Italics added.)

■ In the present case, the record does not disclose any "permissible reason" as to why counsel was not present, and the facts of this case do

not show that the greatest care was taken to assure that the statements were voluntary. As stated in *Isby,* incriminating statements taken without such aid of counsel, and their admission into evidence, is constitutionally proportioned error.

Furthermore, the probation officer testified that the purpose of the interview was to discuss the offense and to obtain information for the social study. Section 581 provides in part: "It shall be the duty of the probation officer to prepare for every hearing on the disposition of a case as provided by Section 702 a social study of the minor, containing such matters as may be relevant to a proper disposition of the case. Such social study shall include a recommendation for the disposition of the case."

Unfortunately, the probation officer, in testifying at the jurisdictional hearing as to statements made by each minor, when interviewed for the social study report, placed the minor in a very unfair position. If the minor had refused to discuss the case with the probation officer, he then would be uncooperative and possibly not a fit subject for probation. If he did discuss his case, he then would have made admissions or confessions that would have been prejudicial at the jurisdictional hearing. In addition, the minors were just 12 years old. The record does not disclose that they had had any prior experience with a section 602 proceeding or with the police. Counsel had been appointed for them but had not been notified of the interview and was not present. Considering these circumstances, the waiver was not voluntary, but was in effect coerced and thus was not an effective waiver under *Gault* and *Miranda.* The testimony of the probation officer concerning appellants' statements should not have been admitted into evidence and should be stricken.

Without this testimony, the question is then raised as to whether there is sufficient evidence to find that each appellant was a person described by section 602. Section 701 provides that in determining whether a minor is a person described by section 602, the finding of the court must be based only on evidence legally admissible in the trial of criminal cases. ■ On appeal from such a finding, the appellate court may not reweigh the evidence. Its function is to determine whether the record contains any substantial evidence tending to support the finding of the trial court.

■ The only evidence against Peter was that two mini-bikes were missing, that a brown corduroy jacket similar to the one owned by Peter, but not identified as Peter's, was found at the Santa Clara Honda Shop, and Peter was seen riding a mini-bike. Because of the extensive admissions contained in Peter's statement, which we held to be inadmissible, and the very limited evidence against Peter that is admissible, it has not been shown "beyond a reasonable doubt that the error complained of did not

contribute to the verdict obtained." (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Thus the admissible evidence against Peter is insufficient to sustain the finding against him.

■ In the case against Paul, he was arrested with the stolen property in his possession. There was the evidence of Paul's admission to the police officer, "I swiped it," and there was his pointing out of the shop from which the bike could have been taken. The probation officer's testimony concerning Paul's statement added nothing to the admissible evidence against him. Thus *Chapman* would not require a reversal of Paul's case.

Even if Paul's statement constituted a confession, and the testimony concerning the statement was so indefinite that it is difficult to classify, it would not necessarily require a reversal. As stated in *People* v. *Valencia,* 267 Cal.App.2d 620, 627-628 [73 Cal.Rptr. 303]: "[W]e are confronted with the well recognized rule that the introduction in evidence of a *confession* obtained from defendant in violation of constitutional guarantees is prejudicial per se and compels reversal regardless of other evidence of guilt. [Citations.]

"However, in view of the fact that, prior to arraignment and the appointment of counsel, defendant made two clearly admissible confessions we must decide whether, from the record before us, we have a 'rare exception case' in which the erroneously admitted confession had no bearing on the result. [Citations.] . . . The rare exception rule was formulated because in certain multiple confession cases an appellate court could conclude that there was no reasonable possibility that admission into evidence of the improperly obtained confession contributed to the conviction. [Citations.]

"These requirements must be met before the rare exception rule may be applied. It must appear from the record that (1) the inadmissible statement did not contain details significantly different from the other confessions; (2) no undue emphasis was placed on the erroneously admitted confessions by the prosecution; and (3) the sequence of confessions was such that there could be no implication that the legally obtained confessions were induced by those improperly obtained. [Citations.]"

Here the inadmissible statement did not contain details different from the two previous statements, the record does not show that any emphasis was placed on the erroneously admitted statement, and the admitted statements were spontaneous declarations made long before the statement in question. Thus the rare exception rule is applicable here and even if Paul's statement constituted a confession it would not require a reversal.

■ Since the trial of this case, the United States Supreme Court has held that in a juvenile court proceeding to determine whether a minor has committed an act which, if done by an adult, would constitute a crime, the case must be proved beyond a reasonable doubt. (*In re Matter of Winship,* 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].) The question is raised as to whether *Winship* should be given retroactive effect. This was answered in *In re Kenneth W.,* 12 Cal.App.3d 1120, 1122 [91 Cal.Rptr. 702], where the court stated: "*Winship* applies to cases pending on direct appeal from the order or judgment therein. (*In re Steven C.* (1970) 9 Cal. App.3d 255, 262 [88 Cal.Rptr. 97]; *In re Joseph G.* (1970) 7 Cal.App. 3d 695, 705 [87 Cal.Rptr. 25].)"

In *Kenneth W.* the trial court indicated it was applying the preponderance of evidence standard, but in *Joseph G.* and *Steven C.,* as in the present case, the court did not indicate which standard was being applied. In *Steven C.,* the referee specifically refused to apply the guilt beyond a reasonable doubt standard, but there is no indication this issue was presented to or ruled upon by the judge.

This case was tried before the decision in *Winship.* As stated in *Joseph G.,* we must assume that the trial judge followed the law of the State of California at that time, which required proof by a preponderance of the evidence. The failure of the court to apply the standard as required by *Winship* cannot be held to be harmless error. Thus the order appealed from in the matter of Paul T. should be reversed, and the cause remanded to the juvenile court for reconsideration, less the testimony of the probation officer, to avoid requiring the same judge to hear the same evidence a second time before determining the same issues of fact under the standard required by *Winship.* Further, the parties should be permitted to present any additional evidence which they consider necessary to meet the standard of proof now applicable.

In the case of Paul T. the order is reversed with directions to make new findings based on the record, less the testimony of the probation officer, and augmented with additional evidence, if any, produced by the parties, and thereafter to take such further proceedings as may be appropriate.

In the case of Peter T. the order is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.