[Crim. No. 20584. June 21, 1979.]

In re WAYNE H., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
WAYNE H., Defendant and Appellant.

COUNSEL

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Elliot Talenfeld, Harold E. Shabo, John J. Gibbons and Albert J. Menaster, Deputy Public Defenders, for Defendant and Appellant.

Thomas V. Roland as Amicus Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RICHARDSON, J.**—The defendant appeals from judgment declaring him a ward of the juvenile court and committing him to the Youth Authority. (Welf. & Inst. Code, § 602; all statutory references are to that code unless otherwise indicated.) The wardship adjudication is based on a finding that he committed armed robbery. (Pen. Code, § 211.) We will uphold the defendant's contention that his incriminating statement to a probation officer was improperly admitted as substantive evidence of guilt.

Near 9 p.m. on November 23, 1976, a black male brandishing a pistol robbed a Lerner gas station in Gardena, and escaped with $54 in denominations of $20, $5 and $1 bills. The station attendant described the robber as wearing a "yellowish-goldish-brown" jacket and a dark knit cap. Shortly before the robbery an attendant at another Lerner station in the vicinity had noticed the suspicious movements of a gray Chevrolet containing two persons, one of whom was wearing a dark knit cap. She telephoned the police.

Responding to the robbery call, Police Officer Williams observed a gray Chevrolet Nova with driver and passenger travelling away from the crime scene at a high speed. After the Chevrolet "ran" a stop sign, Officer Williams pursued the vehicle. When the passenger threw a pistol out the automobile's window, the officer stopped the vehicle and arrested the occupants. Defendant, a 16-year-old black male, was identified as the ..

passenger. He was wearing a yellow jacket. A beanie cap, a dark knit cap, and $54 in $20, $5, and $1 bills were found on the floorboard of the passenger side of the Chevrolet.

The arrests occurred around 9:10 p.m. Both suspects were taken to the Gardena police station, booked, and held overnight. The next morning, November 24, defendant was questioned by Detective Lynn. Defendant denied any involvement in the robbery and offered an alibi.

At 8:10 p.m. on the 24th, defendant was taken to the Los Padrinos Juvenile Hall where he was interviewed by Probation Officer Wright. Officer Wright gave defendant *Miranda* warnings and explained that the results of the interview would bear on the determination of whether or not defendant would be detained and whether juvenile fitness proceedings would be recommended. Defendant agreed to discuss the case and again denied involvement. When, at the end of the interview, Officer Wright announced that he intended to recommend detention and a fitness hearing, defendant replied, "I did this one."

Defendant was detained in custody and a petition under section 650 was filed charging him with armed robbery (Pen. Code, § 211) (par. I) and possession of stolen property, i.e., the pistol (*id.,* § 496, subd. 1) (par. II). At a subsequent fitness hearing, defendant was found amenable to treatment as a juvenile. In the ensuing jurisdictional hearing, defendant's statement to the probation officer was admitted over objection as evidence of his guilt. The charges contained in paragraph II were dismissed, the allegations of paragraph I were found to be true, and, as noted, defendant appeals from the subsequent wardship adjudication.

 Defendant contends that statements by a juvenile to a probation officer are inadmissible in any subsequent proceeding as confessions or admissions of guilt, or for purposes of impeachment. We agree that the statement in question should have been excluded.

Section 626 affords several options to a peace officer who takes a minor into custody: he may release the minor outright (subd. (a)) or upon a written promise to appear (subd. (b)), or "without unnecessary delay" he may deliver custody of the minor to the probation officer (subd. (c)). If the minor is brought to a probation officer, the latter must investigate the need for further detention, and must release the minor unless specific circumstances are found. (§ 628.) At the time here relevant the probation officer was also charged with filing a wardship petition on any minor he

detained (former § 630); the probation department has further responsibility to recommend a hearing on the issue of transfer to adult court. (§ 707.).

Courts have recognized a number of situations in which the use of statements by adult defendants to a probation officer as admissions in a trial on the issue of guilt would be unfair. Thus, we have held that statements made to a probation officer in the hope that candor will induce a favorable sentencing report are inadmissible against the defendant in any retrial (*People* v. *Harrington* (1970) 2 Cal.3d 991, 999 [88 Cal.Rptr. 161, 471 P.2d 961]) unless "volunteered" by the defendant under the guiding hand of counsel (*id.,* at p. 1000; *People* v. *Alesi* (1967) 67 Cal.2d 856, 861-862 [64 Cal.Rptr. 104, 434 P.2d 360]). Postconviction admissions to the adult criminal court made on a probation officer's advice in hope of lenient treatment are also excluded from use at any subsequent trial. (*People* v. *Hicks* (1971) 4. Cal.3d 757, 762 [94 Cal.Rptr. 393, 484 P.2d 65].)

Similar results have been reached under the Juvenile Court Law. Admissions by a juvenile to a probation officer for use in the preparation of the social study, and to the juvenile court itself in the course of a section 602 jurisdictional hearing, have both been excluded from subsequent adult criminal proceedings. (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587-588 [102 Cal.Rptr. 831, 498 P.2d 1079].) Similarly, it has been held that, where a probation officer obtains damaging statements from a juvenile in the course of preparing the social study, without prior advice to the minor's counsel when the attorney's identity is known, the statements must be excluded from any subsequent juvenile adjudication proceeding. (*In re Paul T.* (1971) 15 Cal.App.3d 886, 893-894 [93 Cal.Rptr. 510].)

The cases have stressed the law's interest in encouraging complete candor between a defendant and his probation officer in the probation interview. The purpose of such an interview is not the marshalling of evidence on the issue of guilt, but rather the assembling of all available information relevant to an informed disposition of the case if guilt is established (§§ 280, 702; Pen. Code, § 1203), or to assist in the evaluation of the minor's fitness for treatment as a juvenile (§ 707). Such decisions, courts have uniformly concluded, should be based on the most complete knowledge of the defendant's background that is possible. His description and explanation of the circumstances of the alleged offense, and his acknowledgment of guilt and demonstration of remorse, may significantly

affect decisions about punishment or transfer for· adult proceedings. (*Bryan* v. *Superior Court, supra,* 7 Cal.3d 575, 587.)

Thus, "[a]s stated in *People* v. *Garcia* (1966) 240 Cal.App.2d 9, 13 [49 Cal.Rptr. 146, 15 A.L.R.3d 1352], . . . quoted approvingly in *Hicks* [*supra,* 4 Cal.3d 757], 'in order [for the probation officer] to get full cooperation from a defendant he should be advised that any statement he makes will be used only for the information of the court in a probationary hearing. We do not doubt that defendants have that belief and that if they knew their damaging admissions could be used against them in another trial they would not talk freely and the purpose of the interview would be frustrated.' [¶] . . . The minor who is subject to the possibility of a transfer order should not be put to the unfair choice of being considered uncooperative by the juvenile probation officer and juvenile court because of his refusal to discuss his case with the probation officer, or of having his statements to that officer used against him in subsequent criminal proceedings. (Cf. *In re Paul T.* [*supra*] . . . 15 Cal.App.3d 886, 894 . . . .)" (*Bryan, supra,* 7 Cal.3d at pp. 587-588.) Such a result would frustrate the rehabilitative purposes of the Juvenile Court Law.

The People suggest that the rule excluding statements to juvenile probation officers applies only to subsequent *adult criminal proceedings,* and, in the case of minors, only *after an adjudication of guilt,* when the proper treatment of the minor is being considered. In contrast, it is urged, the section 628 interview which precedes guilt adjudication is primarily accusatorial, and the "dilemma" faced by a minor in this situation is common to any criminal suspect who must decide whether to cooperate with the police. The cases, and the Juvenile Court Law itself, however, compel a contrary conclusion.

Both *Bryan* and *Paul T., supra,* involved statements by juveniles made *before* determination of criminal culpability, and the *Paul T.* court held that the statements there at issue were inadmissible in a subsequent *juvenile adjudication proceeding.* (See also *In re Gladys R.* (1970) 1 Cal.3d 855, 859-861 [83 Cal.Rptr. 671, 464 P.2d 127] [juvenile judge may not, *prior to jurisdictional hearing,* read social study prepared by probation officer].) *Bryan* stressed the importance of the relationship between the minor and probation officer in the juvenile court setting. (7 Cal.3d at p. 587.)

The interview required by a juvenile probation officer under section 628 is conducted in a nonaccusatory setting. Contrary to the People's contention, the consultation is not analogous to police interrogation of an adult suspect. In fact, the section 628 interview has no counterpart in adult criminal proceedings in which the defendant confers with his probation officer only after conviction. (Pen. Code, § 1203, subd. (a).) ■ The primary purpose of the section 628 interview, as the statutes make clear, is not to elicit evidence of guilt—the function of police questioning—but to assist the probation officer in deciding at the outset of the case whether the minor need be further detained pending a court hearing. (§§ 626, 628, 630.) This approach thereby serves a paramount concern of the Juvenile Court Law—that a minor be treated in the least restrictive means feasible under the circumstances (§ 626; see § 202, subd. (a)).

While the purposes of such an interview are relatively restricted, however, the latitude given the probation officer in reaching a detention decision, and the effect of that decision on the minor, are substantial. The probation officer is required to investigate "the circumstances of the minor *and the facts surrounding his being taken into custody*" in order to determine whether such detention is appropriate. (§ 628, subd. (a), italics added.) Among the factors justifying detention are the risk of the defendant's flight and the possibility that his freedom will present a danger to person or property. (*Id.,* subds. (a)(4), (a)(5).) The probation officer's decision may cause the minor to be detained for a period not exceeding 72 hours after arrest before he receives a court hearing on the detention issue. (See §§ 631, 632.)

Under these circumstances, the minor's frank discussion of the offense may indicate that his involvement was innocent or secondary, or, more to the point, that he is cooperative and remorseful, and is therefore a good candidate for release pending further proceedings. Candor will assist the probation officer in discharging his statutory duty to determine the least restrictive feasible treatment of the minor. (See § 626.) A free interchange between minor and officer should therefore be encouraged.

In considering the nature of the section 628 interview we are not unmindful of section 627.5, which requires the probation officer to advise the minor and his parents that anything the minor says may be used against him, and of his rights to silence, appointment of counsel, and presence of counsel "during *any* interrogation." (Italics added.) The statute further provides that if the minor requests counsel, the probation

officer shall so advise the juvenile court, and counsel "shall" be appointed under section 634.

While the legislative origins of section 627.5 are unclear, its adoption within the year after the United States Supreme Court's *Miranda* and *Gault* decisions suggests strongly that the statute's purpose was simply to assure that the minor would be advised as early as possible of his rights in "any" interrogation, and to make the probation officer responsible for seeing that a request for counsel is honored. Nothing in section 627.5 overcomes the clearly nonaccusatorial import of the interview required by section 628.

■ We conclude that the subsequent use of statements made by a juvenile to a probation officer in a section 628 interview would frustrate important purposes of that statute, and of the Juvenile Court Law generally. We therefore hold that such statements are not admissible as substantive evidence, or for impeachment, in any subsequent proceeding to determine criminal guilt, whether juvenile or adult. Such statements may, of course, be admitted and considered in hearings on the issues of detention and fitness for juvenile treatment.

It follows from the foregoing that the defendant's incriminating statement to Officer Wright should not have been admitted at the jurisdictional hearing. We need not determine whether defendant's declaration "I did this one" constituted a *confession* which requires a per se reversal. (*People* v. *McClary* (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620]; *People* v. *Fioritto* (1968) 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625].) Even if these words are deemed a mere *admission,* their improper introduction invalidates the judgment of wardship unless the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *McClary, supra,* at p. 230.) Did the admission of the damaging statement influence the judgment?

There was, to be sure, strong circumstantial evidence against defendant. His description matched that of the robber. His jacket, and the gun he discarded during the pursuit by Officer Williams, were identified in court as similar to the gun displayed and the jacket worn by the thief. Defendant was a passenger in a car moving quickly away from the crime location minutes after the robbery was committed. Currency, in amounts and denominations identical to that taken in the holdup, and a cap, like that worn by the robber, were found in the vehicle on the side on which

defendant had been riding. The alibi he gave to Detective Lynn proved false.

On the other hand, no witness was able to identify defendant positively. The presence of another black male of similar description in the gray Chevrolet raises a reasonable doubt about who had dominion and control of the currency and the dark cap found in the automobile. The trial judge referred to the incriminating statement in his oral review of the evidence against defendant suggesting that the court may have relied on it. We cannot say that, in the absence of admission of the incriminating statement, the charges against defendant would have been sustained. We must therefore reverse the judgment.

Our disposition of this case makes it unnecessary to reach defendant's additional contentions.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

**BIRD, C. J.,** Concurring.—I write separately to underscore one additional problem that is present in this case.

Wayne H. was arrested at 9:10 p.m., November 23, 1976, but he was not brought before a probation officer until 8:10 p.m. the following day—23 hours later. Welfare and Institutions Code section 626 provides that a police officer who takes a minor into temporary custody may: (a) release the minor; (b) release the minor upon his written promise to appear at a designated time and place; or (c) "take [the] minor *without unnecessary delay* before the probation officer . . . ." (Italics added.)[1] The record contains no explanation whatsoever for the police delay in bringing Wayne H. before a probation officer.

[1]Subdivision (c) of section 626 in its present form also provides: "In no case shall [the officer] delay the delivery of the minor to the probation officer for more than 24 hours if such minor has been taken into custody without a warrant on the belief that he has committed a misdemeanor." This sentence provides an outside limit on the permissible delay in misdemeanor cases, but it does not say that a 24-hour delay is always reasonable in such cases. (See *People* v. *Williams* (1977) 68 Cal.App.3d 36, 43 [137 Cal.Rptr. 70], interpreting the words, "without unnecessary delay," in Pen. Code, § 849.) A delay of less than 24 hours violates section 626 if there are no facts showing it was "necessary."

Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

A probation officer must investigate "immediately" the need for further detention of a minor under section 628.[2] Until a minor is brought before a probation officer, this investigation cannot commence. This responsibility was given to the probation officer to provide a prompt safeguard against an erroneous or arbitrary police decision to keep a minor in custody. (See Report of the Governor's Special Study Commission on Juvenile Justice, Part II—A Study of the Administration of Juvenile Justice in California (1960) p. 81.) If a probation officer determines that further detention of a minor is necessary, then a petition must be filed "immediately." (§ 630.) This initiates the juvenile proceedings. The greater the delay in taking a minor before the probation officer, the greater the delay in initiating proceedings and holding the detention hearing. (§ 632.)

The emphasis in the code on speedy procedures is readily apparent.[3] The unexplained 23-hour delay in this case is difficult to reconcile with the Legislature's concern that the need for prolonged detention of a minor be resolved as quickly as possible. (See Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960) pp. 43-44.)[4]

**CLARK, J.,** Dissenting.—The majority have, in effect, made a policy decision. They have decided that the interest in encouraging the juvenile to be candid and confiding in the section 628[1] interview outweighs the interest in protecting the juvenile and society by resolving guilt on the basis of admissions and confessions obtained in such an interview. This is an arguable position. But the Legislature appears to have taken the opposite position when it enacted section 627.5 requiring the probation officer to advise the minor at the section 628 interview that anything he says may be used against him. Therefore, the judgment should be affirmed.

---

[2]The Legislature's concern is evidenced by its use in subdivision (a) of section 628 of the word "immediately" twice. Only if there exists one or more of the conditions specified in subsections (1) through (7) of subdivision (a) may the minor be further detained. Continued detention is "the exception, not the rule." (*In re William M.* (1970) 3 Cal.3d 16, 26 [89 Cal.Rptr. 33, 473 P.2d 737].)

[3]This court has recently discussed at length the emphasis in the juvenile law on speedy procedures. See *In re Robin M.* (1978) 21 Cal.3d 337, 342-345 [146 Cal.Rptr. 352, 579 P.2d 1].

[4]The commission's comments have been deemed persuasive evidence of legislative intent. See *Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788].

[1]All statutory references are to sections of the Welfare and Institutions Code.