[Crim. No. 39128. Second Dist., Div. Five. June 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
GERONIMO JESUS SANTANA, Defendant and Appellant.

COUNSEL

Edward B. Artman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LAVINE, J.*—Defendant was found guilty of burglary as alleged in count I and of attempted burglary as alleged in count II. He was sentenced to state prison for the upper term of three years on count I, and for four months on count II to be served concurrently with the sentence on count I. Appellant seeks to have this court remand the case for resentencing and to delete imposition of the maximum term for the conviction of burglary.

### FACTS

At the probation and sentence hearing the trial court had before it a probation report containing under the heading "Prior Record: Sources of Information" the following information: "CII (requested 10-23-80, but not yet received), LASO (requested 10-23-80 but not yet received), and the district attorney records." Following this were over three pages of police contacts, arrests, parole and probation information. The report

---

*Assigned by the Chairperson of the Judicial Council.

showed that the probation officer asked appellant about a number of these entries.

At the outset of the probation and sentence hearing the court said: "The court has read and considered the report of the probation officer, has considered said report in this matter.

"If counsel—Do counsel have anything further to add concerning whether probation should be granted or denied?"

Counsel for defendant then replied: "I'll submit it on behalf of Mr. Santana on the report."

The district attorney urged that the court impose an aggravated sentence. Defense counsel argued to the contrary and stated: "If the court is to sentence my client to state prison, I would ask the Court to send him concurrent on the two counts.

"Submitted."

The court then imposed the high term for count I, and when defense counsel urged the contrary, the following occurred:

"THE COURT: Allow the Court to review his notes again.

"Has this defendant served time in prior prison terms?

"[DEFENSE COUNSEL]: He informs me that there was one previous occasion when he was in state prison.

"THE COURT: He has a long history of crime here, of increasing seriousness.

"[DEFENSE COUNSEL]: If the Court would look at the top of the probation report where it indicates 'Record,' the Court will note that the probation officer is supplying the Court information not from the California Identification—CI and I, not from ALASO record check, but from some information given to him by the District Attorney's Office and statements by my client.

"We have no verification by my client's fingerprints that this is, in fact, his record. We have no verification by way of LA number that this is the person displayed in that.

"THE COURT: Was he on probation at the time of this crime?

"[DEFENSE COUNSEL]: I don't know and I'm not certain my client knows about that in that he can't tell you exactly what happened in a court because he's not a lawyer. Sometimes these things pass over defendants' heads."

The court then stated: "The court has considered the factors in aggravation. *The defendant's prior arrests as an adult are numerous and of increasing seriousness.*

"The defendant has served prior prison terms, whether or not they are chargeable as enhancement under section 665 of the Penal Code— And that the defendant was on probation and parole when he committed the crime—

"The court considers burglary a very serious charge. You can't make light of burglary, counsel. People live in absolute fear. The crime is a serious crime." (Italics added.)

The court queried defense counsel as to the entries:

"Does your client deny that he pled guilty in December of 1977 to the charge of theft?

"[DEFENSE COUNSEL]: He says that he made a statement to the police officer there."

The court observed: "But it's the number of crimes: 3-29-77, 12-31-77, 2-12-78. Pled guilty.

".  .  .  .  .  .  .  .  .  .  .  .  .  .

"If he pleads guilty to the crime of theft on 12-31-77, isn't it sufficient? Or on 2-12-78 that he pleads guilty to the grand theft person? Isn't it sufficient in all of these guilty pleas that he's committed serious crimes?

"[DEFENSE COUNSEL]: But this information is coming—

"THE COURT: From him. He tells the probation officer, 'I pled guilty to these charges.' Who knows better than him."

The court then proceeded again to impose the high term for count I stating: "The Court has imposed the upper term for the reasons *that the defendant's prior arrests as an adult are numerous and increasing in seriousness*, that the defendant has served prior prison terms, whether or not charged or chargeable under section 6607.5 of the Penal Code.

"The defendant was on probation and a parole when the crime was committed.

"There didn't appear to be any mitigating factors. This man has a long history of crime involving going to state prison for the maximum term." (Italics added.)

## THE ISSUES

A. Was appellant denied a fair probation and sentencing hearing in the following respects:

1. Did the probation report improperly contain police contacts and arrest information lacking proper support? Yes.

2. Did the trial court use improper information to aggravate appellant's sentence with regard to whether appellant had been convicted and/or served prior prison terms, and with regard to whether appellant was on probation and/or parole at the time of committing the crime in count I? No.

3. Did the trial court use improper criteria for imposing the higher term? Yes.

4. If improper material was considered by the trial court, was this prejudicial to appellant? No.

B. Was appellant denied his constitutional rights if he was not first advised of those rights by the probation officer? No.

DISCUSSION

A. Was appellant denied a fair probation and sentencing hearing in the following respects:

1. Did the probation report improperly contain police contacts and arrest information lacking proper support? Yes.

The first objection is that his probation report contains police contact and arrest information based not on official reports but on second hand information contained in the district attorney's files. The probation officer in assembling his report has the problem of time compliance. Penal Code section 1191 mandates that the superior court shall set the time for pronouncing judgment ". . . which must be within 28 days after the verdict . . . during which time the court shall refer the case to the probation officer for a report . . . provided, however, that the court may . . . further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of. . . ." Section 1203, subdivision (b) provides that ". . . [t]he [probation officer's] report shall be made available to the court and the prosecuting and defense attorney at least nine days prior to the time fixed by the court for the hearing and determination of the report. . . ." Because of these time pressures the probation reports often may not contain the most reliable source of information concerning arrests, convictions, and probation and parole information.

The fact that the probation report contained hearsay is in itself not improper. *People* v. *Valdivia* (1960) 182 Cal.App.2d 145 [5 Cal.Rptr. 832] holds at page 148: "A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. . . Had defendant thought the report insufficient or inadequate he could have presented witnesses to counteract or correct any portion of the report."

While approving *Valdivia*, the California Supreme Court cautioned in *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 719 [135 Cal.Rptr. 392, 557 P.2d 976] (questioned on another point in *People* v. *Green* (1980) 27 Cal.3d 1, 33 [164 Cal.Rptr. 1, 609 P.2d 468]): "We do not, by our holding herein, sanction unbridled judicial discretion to receive

and consider any evidence presented within a probation officer's report on a juvenile's behavioral pattern. There are the initial limitations as to materiality and relevance. Additionally, as we have held with respect to presentence probation reports, fundamental fairness demands that such reports be founded on accurate and reliable information. Thus, *evidence of police contacts not leading to arrest or conviction may not be included in the report without supporting information.*" (Italics added.) The court added in a footnote at pages 719-720:

"'The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. "... [t]he Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report *which deals with past convictions.* If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction." (Standards Relating to Probation (Tent. Draft 1970) p. 37.)' (*People v. Calloway, supra,* 37 Cal.App.3d 905, 908 [112 Cal.Rptr. 745]. . . .)" (Italics in text.)

In *People v. Hickey* (1980) 109 Cal.App.3d 426 [167 Cal.Rptr. 256] the court stated at page 438: "First, the use of the probation report as evidence that the foreign prior was true was an impermissible use of hearsay. While probation reports are clearly hearsay, they have their proper place in sentencing proceedings as an aid to the court. . . . However, they may not be utilized as proof in evidentiary hearings to establish the truth of a prior conviction. . . ."

In *People v. Romero* (1977) 68 Cal.App.3d 543 [137 Cal.Rptr. 675] the court held at page 549: "'While an applicant for probation is not entitled to the same procedural safeguards as in the case of a trial on the issue of guilt, he must be afforded hearing procedures which are fundamentally fair [citation]. There must be some substantial basis for believing the information contained in the probation report is accurate and reliable.'"

The fact that the probation report contained data from the district attorney's files rather than from official reports does not in itself render the data improper. If the data had been obtained from an official re-

port, then the data may be said to be derived from a source which is an exception to the hearsay rule under Evidence Code section 1280, being a record made by a public employee. Of course district attorneys' files would not qualify under section 1280, although the data contained in the files may very well have come from a source which could qualify under this hearsay exception.

The key problem, however, is that the probation report contains police contacts not leading to arrests or convictions in some instances without full supporting information. Also arrests are set forth which did not lead to an adjudication and they are set forth in the section of the report which deals with past convictions. In these respects the probation report contained improper information presented in an improper manner. The probation officer did ask appellant about a number of these entries, and to that extent the harmful effects were partially ameliorated.

■ 2. Did the trial court use improper information with regard to whether appellant had been convicted and/or served prior prison terms, or whether appellant was on probation and/or parole at time of committing the crime charged in count I? No.

In *People* v. *Lutz* (1980) 109 Cal.App.3d 489 [167 Cal.Rptr. 309] the court stated at page 496: "Defendant was given an opportunity to be interviewed by the probation officer and to offer explanations and comments concerning the present offense as well as his prior encounters with the law. Defendant refused to be so interviewed when requested to submit to an interview by the probation officer.... In addition, and more importantly, the record of the sentencing hearing indicates that at no time did the defendant or his counsel make any request or move the court in any way to permit them to present material or witnesses to rebut any of the statements in the probation report. Under such circumstances, defendant cannot now complain of any comments in the probation report, as such conduct constitutes a waiver on the part of defendant." *Lutz* at pages 497-498 also holds:

"In spite of some generalities in the probation report, it did contain basic factual information, including the charge, disposition and sentence in each item of defendant's prior record, with the possible exception of the minor matter.... Except for these two items, there was no showing by defendant that the factual information in the report concerning all of the remaining many items was not completely reliable and accurate. In

addition, it should be noted that none of the items listed in the report were purely arrest records or police contacts, but on the contrary related to events consisting of convictions following arrests of defendant."

In *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808 [177 Cal.Rptr. 627], the court stated at page 823: "Appellant's probation report in the instant case does not contain the kind of bare 'rap sheet' information condemned in *Calloway*, but rather contains lengthy supporting factual information (e.g., victim's statement; statement of appellant in regard to prior arrests, police reports, disposition). The report was on the whole adequate and not misleading. Furthermore, the trial court stated the only thing it was considering in regard to appellant's criminal record, was appellant's conviction for a Health and Safety Code violation. In fact, the trial court thought appellant's 'insignificant' criminal record could be considered a mitigating factor."

In the instant case the probation report has defects not present in the probation reports considered in *Lutz* and *Ratcliffe, supra*, as set forth in discussion A. 1. above. But the trial court did not rely on improper information alone with regard to whether appellant had been convicted and/or served prior prison terms and as to whether appellant was on probation and/or parole at the time of committing the crime charged in count I. It will be noted that on two occasions defense counsel *submitted* the matter of probation and sentence on the probation report itself. When defense counsel later made objections to the use of the data in the report, the trial court queried counsel as to the truth of appellant's conviction of certain offenses, and as to whether appellant was on pro-. bation. Appellant had been asked concerning these items by the probation officer, and had admitted many of the matters considered by the trial court. Appellant was not denied the opportunity of refuting or explaining any items in the report which appellant might regard as untrue. Certainly the trial court did not deny appellant due process in evaluating the truth of the prior convictions, service in prison, or appellant's parole and probation status at the time of committing the crime charged in count I.

█ 3. Did the trial court use improper criteria for imposing the higher term? Yes.

The vice of placing arrest data in the same section as the record of prior convictions is demonstrated in the case at bar, for it is likely that the manner of presentation of the array of arrests misled the trial judge

into use of improper criteria in imposing the high term for count I. California Rules of Court, rule 421 states: "Circumstances in aggravation include: . . . (b) Facts relating to the defendant, including the fact that: . . . (2) The defendant's prior *convictions* as an adult . . . are numerous or of increasing seriousness." (Italics added.)

Although arrest data, properly authenticated, may have a proper place in a probation report (*People* v. *Ratcliffe, supra,* 124 Cal.App.3d at p. 823), the use by the trial court of the arrest record as such for the purpose of aggravation was improper. It is not one of the circumstances in aggravation which is authorized in California Rules of Court, rule 421, *supra,* and falls within the dangers outlined in *People* v. *Chi Ko Wong, supra,* 18 Cal.3d at page 719. We do not mean to say that an arrest may never be used as a factor for imposing enhancement. For example, a defendant may state to the probation officer (and admit explicitly or implicitly at the sentence hearing) "Sure, I was arrested for a burglary, and I was guilty of the offense. But the district attorney did not charge me with the offense because he lacked enough evidence to do so."

In the instant case, appellant admits certain arrests and that he was guilty of those offenses for which he was arrested, but denies knowledge concerning other arrests. The trial judge did not articulate which arrests he was considering, so we cannot ascertain which arrests might properly be considered and which arrests were improperly considered.

■ 4. If improper material was considered by the trial court, was this prejudicial to appellant? No.

Even though the trial court may have considered improper arrest data, the court also articulated on several occasions during the sentence hearing that appellant was also being committed for the high term for the additional reasons that appellant had prior convictions and had served prior prison or jail terms and was on probation and parole when the crime was committed. Since defense counsel proceeded to present arguments to the court as to why appellant should not receive the high term, after the judge initially indicated his intention to impose such high term, it is evident that the court was taking each of the factors independently into account.

Even if the probation officer's report had not included the information concerning arrests which did not lead to conviction, appellant

would have been properly sentenced to the high term for his acknowledged record of prior convictions, and because he was on probation and parole when charged with commission of count I. Therefore, appellant suffered no prejudice by reason of inclusion in the court's sentencing considerations of the number and seriousness of the arrests. In *People* v. *Wagoner* (1979) 89 Cal.App.3d 605 [152 Cal.Rptr. 639], the court held at page 616: "Furthermore, our review of the record does not demonstrate that appellant was prejudiced by the inclusion of the arrest in his probation report. Unlike *People* v. *Romero* [citation], the sentencing judge in the present case made no comments suggesting that he was swayed by the mere 'length' of appellant's arrest record. We find no basis for holding that absent the arrest record, the trial judge would have committed appellant to CRC."

B. Was appellant denied his constitutional rights because he was not first advised of those rights by the probation officer? No.

Appellant argues that since a court is required to give a defendant who intends to admit prior felony convictions charged by the state for purposes of enhancement "... express and specific admonitions as to the constitutional rights waived by the admission" (*In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]), either the probation officer or the court is required to give such admonitions to the appellant before the probation officer may place in his report any admissions by appellant as to prior convictions, probation or parole.

This point may not be raised by the appellant for the first time on appeal, as it was not raised at the probation and sentence hearing. (*In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; see also *People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].) Had appellant raised the point in the court below, the trial court could have done several things including (1) continuing the sentencing hearing to permit the district attorney to bring in authenticated official reports of the convictions and imposition of probation and parole as prima facie evidence of these events; and (2) permitting appellant at the continued hearing to bring in evidence to refute the reports of convictions, etc.

"The contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.'" (*People* v. *Rogers, supra,* 21 Cal.3d at p. 548.)

If the rule were otherwise an appellant could utilize the good features of a probation report at a probation and sentence hearing, and lay back without objecting to alleged defects in the taking of the probation report, secure in the knowledge that such defects could be raised for the first time on appeal, thus insuring to defendant a second bite at receiving a "favorable" sentence.

■ Even if the point had been raised at the probation and sentence hearing, there is no substantive merit in appellant's contention. We find no authority for the proposition that a probation officer must give a convicted adult defendant a *Miranda* warning, or otherwise advise the defendant of the consequences of an admission of any fact. Reasons which explain the lack of authority to support appellant's contention include:

(1) Unlike the role of an investigating officer, the probation officer's function is not to elicit incriminating information when interviewing a defendant awaiting sentencing. His function is to investigate the circumstances surrounding the crime, to develop the prior history and record of the defendant, and to make recommendations on whether probation should be granted or denied. (Pen. Code, § 1203.) The purpose of a personal interview with defendant is to assist in developing mitigating factors as well as aggravating ones. A defendant cannot have it both ways. He knows or should know that information he gives the probation officer of a favorable nature will find its way into the report. He cannot expect that adverse information can be kept out by later claiming that he was not given an adequate warning of his constitutional rights.

(2) One purpose of having the probation officer interview the defendant awaiting sentence is to speed up the investigation process so that defendant can receive a fair sentence within the statutory period. If it were necessary that the matters in a probation report be investigated and proved in the same fashion as the substantive offense, sentence hearings would take place many months after a jury verdict. The losers would be those defendants who were not out on bail.

■ (3) Public policy is to promote the willingness of the convicted defendant to talk to and cooperate with the probation officer, secure in the knowledge that his admissions will not be used against him in any proceedings where the issue of his guilt is involved. (*People v. Harrington* (1970) 2 Cal.3d 991, 999-1000 [88 Cal.Rptr. 161, 471 P.2d 961]; *People v. Hicks* (1971) 4 Cal.3d 757, 762-763 [94 Cal.Rptr. 393, 484

P.2d 65]; *Bryan v. Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079]; *In re Wayne H.* (1979) 24 Cal.3d 595, 602 [156 Cal.Rptr. 344, 596 P.2d 1].) If a probation officer were required to give the *Miranda* warning, it might have a chilling effect upon the willingness of the defendant to cooperate, thus frustrating California policy with regard to the role of the probation officer.

(4) One of the purposes of the *Miranda* rule was to protect in-custody suspects from making implicating statements because of the intimidating presence of investigating officers, and to eliminate the danger that confessions or admissions might be obtained against the suspect's will. The relationship of probation officer to defendant is far different than the relationship of investigating officer to suspect, and consequently these reasons for the *Miranda* rule do not exist.

If we were to consider, arguendo, that the probation officer was under a duty to give certain constitutional warnings to appellant, nevertheless any failure to do so would be harmless error. Appellant did not contend at the probation and sentence hearing that data in the probation report concerning convictions, jail or prison terms, probation and parole was untrue. Nor does he so contend on this appeal. If the data concerning these subjects is true, how is it prejudicial to appellant that such data was included in the probation report?

Even if we were to regard the failure of the probation officer to give certain warnings as harmless error, yet of constitutional dimensions (which we do not), any such error would be harmless beyond a reasonable doubt—able to meet the test of *Chapman v. California* (1966) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.