[Crim. No. 5491. Fourth Dist., Div. One. Mar. 13, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY CALLOWAY, Defendant and Appellant.

■■■■■■■■■■■■■

## COUNSEL

Harold F. Tyvoll, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Alan S. Meth and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**AULT, J.**—Defendant Danny Calloway was found guilty of burglary (second degree) by a jury and applied for probation. After referral to the Department of Corrections for a diagnostic study pursuant to Penal Code section 1203.03, his application for probation was denied and he was committed to the California Youth Authority. On appeal he raises no issues related to his trial and conviction, but asserts his commitment to the Youth Authority should be set aside because of frequent reference in the probation report to "suspicion arrests" which did not result in convictions. He also claims it was a denial of due process for the trial court to consider such "arrests" in denying his application for probation.

In that portion of the probation report denominated "Prior Record," page 3 of the report contains a listing of Calloway's prior contacts with law enforcement agencies and counts.[1] The dispositions shown for eight of these matters (some of them traffic violations) indicate convictions or the equivalent. In four matters (all relating to traffic violations) the disposition is "unknown." Seven police contacts, under the headings of grand theft, burglary and assault with a deadly weapon, all bear the notation: "Not arrested, 849b(1) P.C."

Section 849, subdivision (b)(1), of the Penal Code reads: "Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: . . . [h]e is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested."

Subdivision (c) of the same section states: "Any record of arrest of a person released pursuant to paragraphs (1) and (3) of subdivision (b) shall

---

[1]Page 3 of the probation report is appended as Exhibit A to this opinion.

■■■■■■■■■

include a record of release. Thereafter, such arrest shall not be deemed an arrest, but a detention only."

■ Calloway contends the inclusion in the probation report of the seven "police contacts" in connection with which he was neither convicted nor charged prejudicially associates him with seven serious crimes and so infected his probation hearing as to deny him due process of law. We agree in part. ■ Such records, without supporting factual information, should not be included in a probation report. They are unreliable, highly prejudicial, and under many circumstances could result in a fundamentally unfair hearing.

■ While an applicant for probation is not entitled to the same procedural safeguards as in the case of a trial on the issue of guilt, he must be afforded hearing procedures which are fundamentally fair (*People* v. *Peterson,* 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187]). There must be some substantial basis for believing the information contained in the probation report is accurate and reliable (*Ibid.* p. 727).

The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. ". . . the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction." (Standards Relating to Probation (Tent. Draft 1970) p. 37.)

■ Reference to Calloway's "police contacts" in the probation report under consideration here has even less reliability than the matters specifically condemned in the American Bar Commentary quoted above. The Legislature has declared such incidents "shall not be deemed an arrest" (Pen. Code, § 849, subd. (c)), and the bare fact that the police detained and questioned Calloway on several occasions concerning possible crimes gives rise to no reasonable inference he was a perpetrator of any one of them. Since the officer in each instance was authorized to release Calloway only if he was satisfied there were insufficient grounds for making a criminal complaint against him, the reasonable inference is that Calloway was not involved in any of the crimes under investigation. Inquiry into the facts surrounding the incidents might well reveal no crime had been committed

by anyone or that the crime under investigation had in fact been committed by a person or persons other than Calloway.

■ The prejudice arising from the inclusion of such information in a probation report is obvious. It inevitably tends to associate the applicant with the crimes listed when there is no substantial basis for believing this to be true. Fundamental fairness dictates such information should not be included in the probation report or considered by the judge unless additional facts are supplied which indicate the applicant was involved in the listed offenses despite the fact he was not arrested, charged or convicted of them. (See *People* v. *Peterson, supra,* 9 Cal.3d 717, 726.)

■ Here, however, the trial judge did not deny probation and commit Calloway to the Youth Authority on the basis of the probation report or the information contained in it. He ordered a diagnostic study and report from the Department of Corrections pursuant to Penal Code section 1203.03. Both the supplemental probation report and the judge's statements at the final hearing show the department recommended Youth Authority commitment for Calloway.

The trial judge was not misled by the prejudicial information contained in the probation report. He was motivated to commit Calloway to the Youth Authority because he felt Calloway could best receive training for employment in that facility. The fact Calloway had not been successful when granted probation after another conviction and that revocation proceedings were pending in that case, coupled with his other record of convictions wholly unrelated to matters about which he complains on this appeal, made him a poor risk for a second venture. The hearing procedures were not fundamentally unfair so as to constitute a denial of due process.

The order is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

A petition for a rehearing was denied April 1, 1974.

EXHIBIT A

| CALLOWAY, CR-27509 | | | -3- | 1-2-73 |
|---|---|---|---|---|
| 10-28-70 | SO | SD | FTA-Warrant | $20 fine |
| 10-30-70 | PD | NC | PT | $125 fine & 5 days |
| 11-2-70 | SO | SD | PT | Unknown |
| 11-10-70 | SO | SD | FTA-Warrant | $34 bail forfeit |
| 11-12-70 | SO | SD | Extortion | Not guilty |
| 12-22-70 | SO | SD | Contempt | Unknown |
| 12-22-70 | SO | SD | 1) Smuggle Narcotics into Jail  2) Poss. Narco in Jail  3) Poss Marijuana | Probation 3 yrs. |
| 3-4-71 | SO | SD | Traffic, 3 counts | Unknown |
| 5-21-71 | PD | SD | Burglary | Not arrested, 849b(1) PC |
| 7-19-71 | PD | SD | Visit Gambling | $10 B.F. |
| 8-12-71 | SO | SD | Burglary | $125 fine, 7 days |
| 9-5-71 | PD | SD | ADW | Not arrested, 849b(1) PC |
| 10-2-71 | PD | SD | Grand Theft | Not arrested, 849b(1) PC |
| 3-17-72 | PD | SD | Burglary | Not arrested, 849b(1) PC |
| 4-5-72 | PD | SD | Burglary | Not arrested, 849b(1) PC |
| 4-29-72 | PD | SD | FTA-Warrant | Unknown |
| 7-17-72 | PD | SD | Burglary | Not arrested, 849b(1) PC |
| 8-14-72 | PD | SD | Burglary | Not arrested, 849b(1) PC |
| 9-1-72 | PD | SD | Burglary | INSTANT OFFENSE |
| 12-16-72 | PD | SD | Contempt | Probn. viol. Case M-1039458 |

Danny Calloway suffered his first arrest in October of 1970. In the two years from October 1970 to December 1972, he had 20 separate police contacts. He was taken into custody on charges of Burglary or Theft nine different times although he was released under Section 849b(1) of the California Penal Code on five of these occasions.