[Crim. No. 29205. Second Dist., Div. Three. Mar. 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ROMERO, Defendant and Appellant.

544

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Martin Stein, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**[*]—Joe Romero was convicted in a jury trial of selling heroin (Health & Saf. Code, § 11352, subd. (a)). He was sentenced to state prison and appeals contending: "I. The trial court abused its discretion in not granting appellant's motion for a mistrial in light of the prosecutor's misconduct during the course of his cross-examination of appellant. II. Appellant was denied a fair probation and sentencing hearing by virtue of the reference to numerous police contacts with which he was never charged and/or convicted. III. The trial court abused its discretion in refusing to adjourn the criminal proceedings so that civil commitment proceedings could be commenced pursuant to the provisions of Welfare and Institutions Code section 3051."

We view the evidence in the light most favorable to the judgment as is required by the familiar rule governing appellate review. At approximately 7 p.m. on October 15, 1975, Detective E. Frederick Browning, working in an undercover narcotics capacity, went to the residence of one Apolonio Cortez Romo. Browning had earlier successfully solicited the unwitting Romo to help him (Browning) purchase heroin. Romo told Browning that they would purchase the heroin through Joe, appellant herein. Browning and Romo went to Joe who, in turn, indicated that they

---

[*]Before Cobey, Acting P. J., Allport, J., and Potter, J.

would have to go to yet another residence to get the heroin. Upon arrival at the latter location, Browning gave appellant $25 in recorded county funds and appellant exited the vehicle and disappeared from Browning's view. He returned and produced a pink balloon, the contents of which were later analyzed to contain .79 grams of heroin. On the way back to his residence, appellant removed a "pinch" of heroin for himself.[1]

Appellant testified in his own behalf, tendered the defense of entrapment, and the jury was instructed thereon. Appellant admitted that he took Romo and Detective Browning to a heroin source as a favor to Romo. Appellant received $25 from Romo, went to the residence where he obtained the heroin, and gave the balloon to Romo. He characterized the transaction as "scoring" or "buying for somebody" as opposed to a sale.

■    Appellant's first contention based upon the quoted portion of the transcript[2] is without merit.

---

[1]Detective Browning testified that the "pinch" was ". . . more or less a fee that he charges, or that a middleman would charge to score me some heroin. It is usually for their own need."

[2]"Q. BY MR. GAROFALO [deputy district attorney]" Sir, is it more of a fact that you had the heroin all the time? A. No. Q. You just took the officer there to throw them off the track, so to speak? MR. SAGE: [defense attorney]: Your Honor, may we approach the bench? THE WITNESS: No. THE COURT: Well, excuse me. Do you have some objection, Mr. Sage? MR. SAGE: Yes, implying facts not in evidence, prejudicial misconduct. MR. GAROFALO: This is cross-examination. THE COURT: Well, first of all, the objection will be sustained on the grounds that it assumes facts not in evidence. And secondly, the jury is admonished at this time that a question is not evidence. It is significant only in the context that it provides some meaning to the answer. You are not to draw any inference whatsoever from the question that has been asked. And I so admonish the jury. Do you want to rephrase the question. MR. SAGE: May we approach the bench? THE COURT: Yes. MR. SAGE: With the reporter. (The following proceedings were held at the bench beyond the hearing of the jury:) MR. SAGE: Your Honor, I would like to make a motion for mistrial on the grounds that the question is prejudicial in that it implies my client had this heroin on his person all along, and he intended to sell it, rather than act as an agent for the buyer. And there is absolutely no evidence whatsoever, and I challenge the prosecutor to prove any evidence my client had this heroin in his possession and didn't obtain it from another person. It is highly prejudicial. MR. GAROFALO: The inference is certainly available in that the officer did not see this defendant enter the house. There is no evidence that he in fact entered the house, contacted anyone—I am only making inquiry. And it is cross-examination. It need not be a fact in evidence at that time. THE COURT: I think, Jack, you have to draw a distinction between what you are permitted to argue as reasonable inference from the evidence, in argument, and the manner in which you phrase a question. I think that Mr. Sage is correct. Now you can ask him directly whether or not he had any heroin on his person at the time he went there. And he can answer no, or whatever the answer may be. And then you can argue the facts that you are arguing to me, and ask the jury that as a reasonable inference from the evidence they can draw an inference he had the heroin all

"... 'A motion for a mistrial is addressed to the sound discretion of the trial court. It may properly be refused where the court is satisfied that no injustice has resulted or will result from the occurrences of which complaint is made. . . .' " (*People* v. *Ray*, 252 Cal.App.2d 932, 962 [61 Cal.Rptr. 1]; see also *People* v. *Slocum*, 52 Cal.App.3d 867, 884 [125 Cal.Rptr. 442].) "Misconduct of the prosecutor implies a dishonest act or an attempt by an attorney to persuade the court or jury by the use of deceptive or reprehensible methods. [Citation.] 'Whether the prosecution has committed misconduct depends upon the particular circumstances of each case and bad faith must be shown to establish the existence of misconduct. . . .' [Citation.] [¶] Bad faith may be manifested by the prosecutor's intentionally asking questions of witnesses, the answers to which he knows are inadmissible because of their prejudice to the accused [citation], or by asking questions of witnesses knowing those questions to be inadmissible and improper and not expecting to receive answers to them. [Citations.]" (*People* v. *Gomez*, 63 Cal.App.3d 328, 338 [133 Cal.Rptr. 731].)

Applying the aforementioned principles to the instant case, we conclude that the trial court did not abuse its discretion (see *People* v. *Rist*, 16 Cal.3d 211, 219 [127 Cal.Rptr. 457, 545 P.2d 833]) in denying the motion for a mistrial notwithstanding its premise that the subject question was, in fact, objectionable. "The trial court's use of an unsound course of reasoning is immaterial if the action ultimately taken . . . was proper. [Citation.]" (*People* v. *Patton*, 63 Cal.App.3d 211, 219 [133 Cal.Rptr. 533].) We are not convinced that the prosecutor's question was improper. On the contrary, it appears that the question was based upon a permissible inference or deduction "grounded on evidence of record. [Citation.]" (*People* v. *McDaniel*, 16 Cal.3d 156, 176 [127 Cal.Rptr. 467, 545 P.2d 843].)[3]

---

the time. But I don't think you can ask the question in the manner in which you asked it, unless you are prepared to prove that those facts did exist. I will deny the motion. And I urge that you refrain from asking that type question. MR. GAROFALO: All right. (The following proceedings were held in .open court in the presence of the jury:) THE COURT: All right. So that the record is clear, then, the objection to the last question will be sustained. Ladies and gentlemen, I will again remind you that you are never to speculate to be true any insinuation suggested by a question which is asked a witness. A question is not evidence. And it may be considered only as it supplies meaning to the answer. Now to the extent the question was asked, you are not to draw any inference from that question. You may proceed. . . ."

[3]The record expressly reflects the trial court's rationale (see fn. 2), i.e., that the district attorney could *argue* the inference or deduction that appellant possessed the heroin the entire time. If the subject was proper for argument, which we believe to be the case, it was surely a proper subject for cross-examination.

Appellant's second contention is meritorious. In *People* v. *Calloway*, 37 Cal.App.3d 905 [112 Cal.Rptr. 745], the defendant contended that ". . . the inclusion in the probation report of the seven 'police contacts' in connection with which he was neither convicted nor charged prejudicially associates him with seven serious crimes and so infected his probation hearing as to deny him due process of law." (*People* v. *Calloway, supra,* at p. 908.) The court, agreeing in part, indicated, "Such records, without supporting factual information, should not be included in a probation report. They are unreliable, highly prejudicial, and under many circumstances could result in a fundamentally unfair hearing. [¶] While an applicant for probation is not entitled to the same procedural safeguards as in the case of a trial on the issue of guilt, he must be afforded hearing procedures which are fundamentally fair [citation]. There must be some substantial basis for believing the information contained in the probation report is accurate and reliable. [Citation.] [¶] The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. '. . . the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. . . .' " (*People* v. *Calloway, supra,* at p. 908; see also *People* v. *Chi Ko Wong,* 18 Cal.3d 698, 719-721 [135 Cal.Rptr. 392, 557 P.2d 976].)

In the instant case, the trial court indicated that it had "read and considered the probation report" and after hearing defense counsel, said[4] ". . . I think the record should reflect we have had a lengthy conference in chambers, and much of the information that you have relayed now was discussed in chambers. [¶] Mr. Romero has *a lengthy record.* Four times he's been given the maximum sentence in County Jail. That is a year sentence in the County Jail. And apparently it has not done any good whatsoever. [¶] I am going to find, first of all, by virtue of excessive criminality, that Mr. Romero is not a suitable candidate for placement at the California Rehabilitation Center for Narcotics addiction. [¶] Probation in this matter will be denied. I am going to sentence Mr. Romero to State Prison for the term prescribed by law." (Italics added.)

---

[4]Defense counsel said, inter alia, "I would like to suggest to the Court to consider a referral to the California Rehabilitation Center because my client is a narcotics addict."

Under the heading of "arrest record"[5] we note 31 entries, approximately one-third of which resulted in misdemeanor convictions; 10 other entries are followed by "No Disposition"; 5 others were dismissed. As was the case in *People* v. *Calloway, supra,* 37 Cal.App.3d 905, 909, "[t]he prejudice arising from the inclusion of such information in a probation report is obvious." We are unable to conclude as did the court in *People* v. *Morales,* 49 Cal.App.3d 732, 738 [122 Cal.Rptr. 804], that the sentencing judge did not rely on that portion of the probation report which recited "police contacts." In this case, the trial court improperly relied, to some degree, upon appellant's "lengthy record" in its choice of a proper disposition. ▉ Given the facts and circumstances we believe that appellant is entitled to have a trial court consider the invocation of Welfare and Institutions Code section 3051 on a probation report consistent with the views expressed herein. We express no opinion on how the court should exercise its discretion, but we deem it beneficial to make certain observations with respect thereto.

Welfare and Institutions Code section 3051 in relevant part provides as follows: "Upon conviction of a defendant for any crime in any superior court . . . if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition or execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility unless, *in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section.*" (Italics added.)

▉ It is well established that a trial court has discretion to invoke the provisions of Welfare and Institutions Code section 3051 and we have found no reported case wherein the refusal to invoke the statute has been held to be an abuse of discretion. *(People* v. *Flores,* 6 Cal.3d 305, 309-310 [98 Cal.Rptr. 822, 491 P.2d 406]; *People* v. *Morales, supra,* 49 Cal.App.3d 732, 736-738 [122 Cal.Rptr. 804]; *People* v. *Stevens,* 38 Cal.App.3d 66, 71 [113 Cal.Rptr. 49]; *People* v. *Deas,* 27 Cal.App.3d 860, 862-863 [104 Cal.Rptr. 250].) Nevertheless, " '[t]he discretion [to invoke Welfare and Institutions

---

[5]Appellant's "arrest record" is reprinted in full as Appendix A.

Code section 3051 *vel non*] . . . vested in the court should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy, responsive to the current medico-social approach to the issue of drug addiction [citation] favors inquiry into the addictive status of *all* criminal defendants whose record indicates the presence of an addiction problem.' " (*People* v. *Navarro,* 7 Cal.3d 248, 262 [102 Cal.Rptr. 137, 497 P.2d 481]; italics in original.)

We need not here decide whether the trial court abused its discretion in refusing to invoke section 3051. We do, however, question the trial court's determination of "excessive criminality." Appellant's record leads us to the inescapable conclusion that he is addicted to dangerous drugs.[6] Twenty-five of the thirty-one entries in his "arrest record" refer to dangerous drugs and/or alcohol. Our observation is buttressed by reference to the trial court's own "Benchbook" (Los Angeles Superior Court Criminal Trial Court's Benchbook, pp. 478-481) wherein it states that the trial judge, in determining the defendant's "suitability" for commitment to CRC should look to the following "Exclusionary Criteria" provided by CRC:

I. Persons Suitable for Civil Addict Program

    a.   Primary problem is narcotic addiction.

    b.   Person is capable of being controlled in minimum security.

    c.   Trafficking in narcotics is minimal—for subject's own need.

    d.   Person is over 18 years old.

    e.   Person is nonaggressive, and any previous commitments have been mainly to county jail.

---

[6] The probation report indicates that appellant has been "mainlining" heroin since the age of 16. Ironically the report also recites the fact that appellant does not believe that he is addicted to heroin despite his admission of using two spoons of heroin a day for the two years prior to the instant offense.

II. Persons Unsuitable for Civil Addict Program

    a.   Excessive Criminality

    b.   Large-scale trafficking in narcotics, dangerous drugs, or marijuana.

    c.   Pattern of aggressive and assaultive behavior.

    d.   Other mental or psychiatric disorders.

    e.   Persons who repeatedly abscond from supervision or repeatedly relapse to narcotic use.

    f.   Persons with a history of arson convictions.

    g.   Extreme protective custody cases, including those with a consecutive sentence to be served in another jurisdiction or those who are provocative homosexuals.

III. Special Consideration for Alternative Commitment

    a.   Persons with unresolved probation which might involve a future confinement.

    b.   Persons with deportation warrant outstanding.

    c.   Parolees.

With the exception of the trial court's conclusion of "excessive criminality," it would appear that appellant meets every "suitable" criterion and does not meet any of the "unsuitable" criterion for a CRC commitment. Given the facts and circumstances herein, we find it difficult to see why the trial court did not invoke section 3051. We do not seek to minimize the seriousness of the offense of selling heroin. However, aiding and abetting a one-balloon sale is certainly not a "large scale trafficking" and does not fall within the category of the reported cases wherein the refusal to invoke section 3051 has been held not to be an abuse of discretion. (*People* v. *Flores, supra* [first degree robbery with a use of a firearm, Pen. Code, §§ 211, 211a, 12022.5], *People* v. *Morales, supra* [first degree robbery with a use of a firearm, Pen. Code, §§ 211, 211a, 12022.5], *People* v. *Stevens, supra* [first degree burglary, Pen. Code,

§§ 459, 460], *People* v. *Deas, supra* [first degree robbery, Pen. Code, §§ 211, 211a].)

"Pertinent is the following from *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 256-257: '. . . the judge has no expertise to decide, and the statute [Welf. & Inst. Code, § 3051] does not assume that he will decide, that the defendant, in fact, is a fit subject for commitment and treatment, judged either by his past record or by his ability (for reasons either of character, intelligence or aptitude) to respond to treatment; the judicial decision is merely that, as far as the court's limited knowledge about defendant, and the judge's nonexpert opinion, permit, it is worthwhile to try the rehabilitation program in his case. But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued.' [Citation.]" (*People* v. *Wisdom,* 47 Cal.App.3d 482, 487 [120 Cal.Rptr. 745].)

The judgment is affirmed insofar as it adjudicated appellant's guilt. The sentence imposed is vacated and the case remanded to the trial court for resentencing in light of this opinion.

---

**APPENDIX**

ARREST RECORD:

SOURCES OF INFORMATION:
LA PD, LASD, CII and El Monte PD.
JUVENILE HISTORY:

| | |
|---|---|
| 12-25-66 | LA PD - 10851 CVC (Joyriding) Released, insufficient evidence to prosecute. |
| 2-24-68 | LA PD - 11500 H&S (Possession of Heroin) Petition requested. |
| 2-14-69 | San Diego PD - 459 P.C. (Burglary) 647F P.C. (Drunk - Drugs) On 2-15-69 |

burglary charge dismissed - evidence insufficient. On 2-24-69 petition sustained on Ct. 11 and matter referred to LA County for disposition.

ADULT HISTORY:

3-23-69     LA PD 647F P.C. (Drunk - Drugs) On 3-26-69 defendant pleaded guilty. State Prison one year suspended. 30 days Co. J.

4-4-69     LA PD - 23106 VC (Driving Under the Influence of Drugs) No disposition.

4-30-69     LA PD - 647F P. C. (Drunk in Public) On 5-1-69 defendant pleaded guilty. Court orders 5 days diagnostic CRC. 3 days Co. Jail.

5-16-69     LA PD - 459 P.C. (Burglary) On 5-19-69 released as evidence insufficient.

7-11-69     LA PD 11910 H&S (Possession of Dangerous Drugs) No disposition.

7-16-69     LA PD 459 P.C. (Burglary) No disposition.

7-16-69     LA PD 459 P.C. (Burglary) No disposition.

8-7-69     LA PD 647F P.C. (Drunk) On 8-8-69 defendant pleaded guilty. 2 days CRJ, credit for time served.

8-12-69     LA PD - 11910 H&S (Possession of Dangerous Drugs) On 8-13-69 25662 B&P and 647F P.C. dismissed per 1385 P.C., 148 P.C., one year summary probation on condition 15 days CRJ.

10-25-69     LA PD - 23106 VC (Driving Under the Influence of Drugs) 12951 VC (No License in Possession), 40508 VC (Failure to Appear), 26453 VC (Unsafe Brakes) and 24603 VC (Improper Stop Lights) No disposition.

2-27-70     LA PD 647F P.C. (Drunk) Defendant pleaded guilty. 30 days CRJ suspended. One year summary probation.

5-28-70     LA PD 647F P.C. (Drunk) On 5-29-70 defendant pleaded guilty. 90 days suspended. One year summary probation with conditions.

6-10-70     LA PD - 11910 H&S (Possession of Dangerous Drugs) On 10-4-71 defendant pleaded guilty. On 10-26-71 5 years formal probation. Proceedings suspended, 365 days CRJ, credit for 98 days served. On 5-15-73 probation revoked and defendant sentenced one year CRJ. Credit for 58 days served.

8-14-70     LA PD 11530 H&S (Possession of Marijuana) No disposition.

8-22-70     LA PD 23102 CVC (Driving Under the Influence) No disposition.

1-30-71     LA PD 647F P.C. (Drunk) And traffic warrant for arrest of 10-25-69 re vehicle violations. On 2-1-71 defendant pleaded guilty to 647F P.C. 40 days suspended.

2-28-71     LA PD - 11910 H&S (Possession of Dangerous Drug) On 5-18-71 defendant pleaded guilty.
On 5-15-73 265 days CRJ, credit for 58 days served.

6-14-71     San Fernando PD 459 P.C. (Burglary) On 10-4-71 case consolidated with warrant number 113378.

10-3-72     LA PD 23102 CVC (Driving Under the Influence) On 4-24-73 dismissed 23102 CVC; defendant pleaded guilty to 23103 VC. $150 fine or 30 days CRJ.

10-19-72     LA PD 11911 H&S (Possession of Dangerous Drugs For Sale) On 5-15-73 defendant pleaded guilty to 11910 H&S, proceedings suspended, 3 years summary probation without supervision. One year jail, credit for 58 days served.

12-5-72     LA PD 11911 H&S (Possession of Dangerous Drugs For Sale) And warrant number A124042 on 1-2-73, 148 P.C. (Not guilty. Motion to Show Cause granted.)

12-31-72     LA PD 459 P.C. (Burglary) And warrant number 844964 - Burbank, on 1-2-73 rebooked warrant re 484 P.C. On 1-3-73 convicted 667 P.C., pleaded guilty, ISS, 12 months. SP, 10 days.

3-22-73     LA PD 11350 H&S (Possession of Heroin) And on 3-23-73 rebooked bench warrant for 11910 H&S. On 4-3-73 dismissed insufficient evidence.

4-24-75     El Monte PD - 11550 H&S (Under the Influence of a Controlled Substance) On 4-25-75 case dismissed.

7-20-75   El Monte PD - 11550 H&S (Under the Influence of a Controlled Substance) On 7-21-75 DA rejects because of lack of probable cause.

9-20-75   El Monte PD - 11550 H&S (Under the Influence of a Controlled Substance) No disposition.

11-20-75   El Monte PD - Warrant Number A-529946 charging 11352 H&S (Sales of Narcotics), warrant M100456 charging 11550 H&S (Illegal Use of a Controlled Substance) No disposition.

4-12-76   El Monte PD - 11550 H&S (Under the Influence of a Controlled Substance) And 11364 H&S (Possession of Narcotic Paraphernalia) No disposition.
(Refers to Present Offense)

4-12-76   El Monte PD - 11550 H&S (Illegal Use of Controlled Substance) And 11364 H&S (Possession of Narcotic Paraphernalia) No disposition.
(Matter Pending)

5-11-76   El Monte PD 647F P.C. (Drunk in Public) 11550 H&S (Illegal Use of. Controlled Substances) No disposition.
(Matter Pending)