[Crim. No. 18278. First Dist., Div. One. Oct. 29, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN TOBIA, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender,

Harriet Wiss Hirsch and Frances Ternus, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson, John T. Murphy and Ina Levin Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRODIN, J.**—Appellant, convicted of burglary and sentenced to the middle term of two years, contends that the trial court improperly denied his motion for the mitigated term, and that in any event he is entitled to good time/work time credit for time he spent in presentence custody. We find merit only in the second contention.

I

The circumstances of appellant's crime can be summarized briefly. On October 27, 1977, Mrs. Patricia Froio saw a car pull up in front of her neighbor's house and two men walk toward her neighbor's front door. Suspicious, Mrs. Froio called her neighbor. Receiving no answer, she then called the police. While on the phone with the police, she saw appellant get out of the car and run toward her neighbor's house, she saw the car pull into the neighbor's driveway and then pull out again and leave, and she saw appellant leave the house and run across the street into a wooded area. Police dispatched to the scene apprehended appellant in the wooded area. Their investigation of the house disclosed that the front door had been forced, and the bedroom ransacked; a television set and other items were piled up near the entryway in apparent readiness for transportation. Appellant was found guilty of second degree burglary.

Prior to sentencing the trial court received and considered a probation report which contained a summary of the offense and recommendations by the district attorney, a report of the defendant's statements to the probation officer, and a description of various "social factors" which included "prior probation history." The district attorney's recommendations included the following paragraph:

"RECOMMENDATION: Defendant Tobia has accumulated, in a very brief time, criminal charges extending over three counties. On November 29, 1976, the defendant was convicted of 496 P.C. in San Joaquin County. He was placed on probation and ordered to serve one year in the county jail as a condition of his probation. On August 17, 1977, a no-bail bench warrant for his arrest was issued in Stockton, charging the defendant with a violation of his probation. That warrant is still outstanding. Since the issuance of that warrant, the defendant committed the offense for which he presently stands convicted and has been held to answer in Santa Clara County and arraigned in Superior Court in that county on still other felony charges (459 and 496 P.C.). The defendant is known to San Joaquin County and Santa Clara County as Roscoe Arafiles. In addition, the defendant has six other aliases in the Bureau of Identification file; among them, being Allen Tobia (the name under which he is known to Alameda County), Roscoe Tutwiler, and Ralph Sutton."

The section on *"Prior Probation History"* read as follows: "On November 29, 1976, in San Joaquin County Superior Court, following conviction by plea to receiving stolen property, the defendant was granted probation for three years with the primary condition being that he serve one year in the County Jail. The defendant had actually been a principal in two burglaries and an attempted burglary. He was charged with two counts of burglary and one was dismissed in view of his plea to the other. A further charge of being under the influence of a controlled substance at the time of his apprehension for the attempted burglarly, was dismissed in Municipal Court in view of his Superior Court plea. [¶] The defendant was released from the San Joaquin County Jail in June, 1977. He was interviewed by the probation officer on June 3, 1977 and at that time, special emphasis was given to the condition requiring urinalysis testing. He was scheduled to report twice per month for testing. The defendant never reported after that and because he had come to Santa Clara County without his probation officer's knowledge or consent, his whereabouts was unknown. Therefore, on December 30, 1977 the defendant's probation was revoked and a bench warrant issued for his arrest. [¶] The following additional information concerning law enforcement contacts with the defendant and his family is enlightening. [¶] On November 30, 1973 the defendant was present when heroin was sold to an undercover officer. On December 11, 1973 pursuant to a search warrant, the defendant's residence was searched. 'Mama' Tutwiler, the defendant's mother, was arrested as she was seen throwing a bag containing 24 balloons of heroin. The following items were

found in the residence: two kilos of marijuana, heroin cutting materials, and measuring devices. The defendant was found hiding in the attic of the residence and arrested on an outstanding warrant. Several phone calls were taken during the search in which callers wanted to score drugs. [¶] On February 8, 1974 a San Joaquin Sheriff's Officer stopped a vehicle containing the defendant and two others, one of whom was a female. They were leaving a 7-11 Store at the time and in questioning the clerk, deputies were told the three had solicited him for an act of prostitution. The girl was from Oakland, California. [¶] Meanwhile, law enforcement officers were receiving reliable information about the defendant and his family's heroin activities. On July 12, 1976 the defendant was arrested by the sheriff for violation of section 11550 of the Health and Safety Code. He was examined at the Stockton Police Department for narcotics usage and found to have non-reactive pupils and 23 marks, some recent. [¶] The defendant told Pretrial Services immediately after his arrest that he was never involved with narcotics and this was confirmed by telephone by his brother Leonard, with whom the defendant lived in San Jose. The defendant informed the undersigned that he had experimented with most drugs and narcotics including heroin, cocaine and PCP."

At sentencing, defense counsel requested the mitigated term. The court denied the motion and instead sentenced appellant to the middle term of two years. His stated reasons for doing so were as follows: "The crime was planned by several people and committed by several people, and he was actively participating in it, and the manner in which the crime was carried out demonstrated criminal sophistication on the part of the entire group. I'm giving the middle term because the defendant is a younger person and also I think that there is this possibility that the conduct might have been aggravated by drinking because there was the smell of alcohol on the breath, although the jury didn't find it affected his intent, but I think that was a factor. *And he does have other matters pending in other counties,* and I feel the middle term is the just term to be given in this case." (Italics added.)

Appellant contends that the reference to "other matters pending in other counties" evidences reliance by the court upon information contained in the above-quoted portions of the probation report with respect to pending matters and arrests which did not result in conviction, and argues that reliance upon these "impermissible factors" deprived him of due process of law under the principles declared in *People* v. *Calloway*

(1974) 37 Cal.App.3d 905 [112 Cal.Rptr. 745], and applied in *People v. Romero* (1977) 68 Cal.App.3d 543 [137 Cal.Rptr. 675].

The defendant in *Calloway* complained that the trial court denied his application for probation and committed him to the California Youth Authority on the basis of a probation report listing various prior contacts with law enforcement agencies and courts, including four matters on which the disposition was listed as "unknown" and seven contacts (under the headings of grand theft, burglary and assault with a deadly weapon) bearing the notation "'Not arrested, 849b(1) P.C.'" (Pen. Code, § 849, subd. (b)(1) provides for release from custody of persons arrested without a warrant where there are insufficient grounds for making a criminal complaint against the person arrested.) The court disapproved the use of "raw arrest data" in a probation report, citing the condemnation of that practice by the American Bar Association's Standards for Criminal Justice.[1] And it characterized the reference to Calloway's police contacts not resulting in arrest as having "even less reliability" (in the absence of additional facts which indicate the applicant was involved in the listed offenses) "inevitably...to associate the applicant with the crimes listed when there is no substantial basis for believing this to be true." (37 Cal.App.3d at pp. 908-909.)

The court in *Calloway* found no deprivation of due process because the trial court had not relied upon the impermissible factors in sentencing, but in *Romero* the court applied *Calloway* principles to overturn a sentence based upon a probation report which contained, under the heading of "arrest record," some 31 entries, 10 of which showed "no disposition" and 5 others "dismissed," with no statement as to the remainder. The court in *Romero* found evidence that the trial court had "improperly relied" upon that misleading information. (68 Cal.App.3d at p. 550.)

Other cases and relevant rules, not cited in the briefs of either party, cast further light upon the questions presented. While the commentary

---

[1]The court's reference was to the following excerpt from the commentary to the American Bar Association Standards: "...the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction." (Stds. Relating to Probation (Tent. Draft 1970) p. 37.)

to the American Bar Association Standards Relating to Probation (Approved Draft, 1970) referred to in *Calloway* notes that the American Bar Association advisory committee would prefer to exclude from presentence reports any record of arrests not resulting in convictions or juvenile adjudications of guilty, our Supreme Court in *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 867-868 [132 Cal.Rptr. 464, 553 P.2d 624] (cert. den., 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143]), confirmed the propriety of considering "not only current arrests of the defendant giving rise to charges still pending [citation], but also prior arrests which did not result in conviction [citations]," citing *Calloway* with the preface "but see" and the comment "dictum."

In the same year as *Loder* the Supreme Court decided *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976], involving the nature of information appropriate for consideration when a juvenile court determines whether a minor is fit for treatment as a juvenile offender. After observing that strict evidentiary standards did not apply (18 Cal.3d at p.717), the court stated that in addition to limitations as to materiality and relevancy: "as we have held with respect to presentence probation reports, fundamental fairness demands that such reports be founded on accurate and reliable information. Thus, evidence of police contacts not leading to arrest or conviction may not be included in the report without supporting information. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 727...; *People* v. *Calloway* (1974) 37 Cal. App.3d 905, 908-909 ....)" (*Id.*, at p. 719.) The court went on to consider the contents of the report before the juvenile court in that case. With respect to a reference in the report to a specific incident causing juvenile court proceedings to be initiated against the defendant, the court commented, "As advised by *Calloway*, the report clearly specified the disposition of those proceedings." (*Id.*, at p. 720.) With respect to other information involving the defendant's *suspected* involvement in other offenses, the court stated: "Such information as to suspected involvement in other offenses must, to the extent possible, be supported with factual information, and allegations with little support should be accorded little weight. Unlike the situation in *Calloway* where a court could be misled by inclusion of mere police contacts in a report purportedly detailing past convictions, the information presented herein could not have so misled the juvenile court." (*Id.*, at pp. 720-721.) Finally, the court observed that should allegations of suspected involvement in other crimes be made without adequate factual support "counsel is free to exploit this weakness at the hearing." (*Id.*, at p. 721, fn. 18.)

In *People* v. *Phillips* (1977) 76 Cal.App.3d 207 [142 Cal.Rptr. 658], the probation report listed 10 arrests with indications of either "no disposition shown" or "dismissed for insufficient evidence." (*Id.,* at p. 212.) Noting that the Supreme Court had recently confirmed the propriety of considering past arrests not leading to convictions in *Loder* v. *Municipal Court, supra,* the court distinguished *Chi Ko Wong* as requiring factual supporting information only for "'police contacts *not leading to arrest or* conviction'" (*id.,* at p. 214), and *Calloway* as insisting only that arrests be clearly labelled so that the trial judge will not mistake an arrest for a conviction. To demonstrate impropriety, the court said, it would be necessary to show both that the trial judge mistook appellant's arrests for convictions and that the judge materially relied upon that mistaken belief in sentencing the defendant, and there was no evidence of either. The court distinguished *Romero* as involving "unique circumstances" demonstrating "that the trial court mistook prior arrests for convictions and relied solely on that mistake in its sentencing decision." (*Id.,* at p. 216.)

In *People* v. *Jackson* (1978) 78 Cal.App.3d 533 [144 Cal.Rptr. 199], the appellant complained that the trial judge had improperly relied in sentencing upon statements in a probation officer's report concerning prior police contacts not verified with supporting factual information. Acknowledging that "without supporting factual information and a proper concern for reliability police contacts not leading to arrest or conviction may not be relied upon" (*Id.,* at p. 539), and that the probation report contained some such data, the court declined to overturn the sentence in the absence of evidence "that any factually unsubstantiated police contacts contained in the probation officer's report actually misled the judge." (*Id.,* at p. 541.)

The most recent published opinion in this area is that of this division in *People* v. *Taylor* (1979) 92 Cal.App.3d 831 [155 Cal.Rptr. 62]. Rejecting appellant's argument that the court erred in aggravating defendant's sentence in part on the basis of his arrest record, we said: "Penal Code section 1170, subdivision (b), states that in determining whether aggravating or mitigating circumstances exist, the court 'may' consider the record in the case and the probation officer's report. These materials traditionally contain arrest data; thus, the statute contemplates such usage. We emphasize, however, that arrests not factually supported should be excluded from such materials (see *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 719. . .; § 12.5(a)(1), Standards Jud. Admin.). [¶] Additionally, California Rules of Court, rule 408, states

that criteria 'reasonably related' to the decision being made may also be considered. Arrest data is reasonably related to various criteria which the rules mandate the court to consider (rule 409), and it can be considered so long as it is not presented in a misleading manner (see *People v. Phillips* (1977) 76 Cal.App.3d 207, 213-215 . . .; cf. *People v. Calloway* (1974) 37 Cal.App.3d 905, 908-909 . . .). The data here was not presented in a misleading manner, and we cannot find anything in the record to support defendant's claim that the court was misled in any way." (*Id.*, at p. 833.)

■ We adhere to the view announced in *Taylor* that arrest records, as well as police contacts which do not lead to arrest, should not be included in a probation report and should not be considered by the trial court in sentencing a defendant unless supporting factual information is included. Otherwise, the trial court is without basis for making intelligent judgment either as to the reliability of the information (*People v. Petersen* (1973) 9 Cal.3d 717, 727 [108 Cal.Rptr. 835, 511 P.2d 1187]), or as to its relevance (*People v. Taylor, supra,* 92 Cal.App.3d at p. 833). This view is in accord with current Standards of Judicial Administration, section 12.5 ("Records of an arrest or charge not leading to a conviction or adjudication of guilt should not be included unless supporting factual information concerning the arrest or charge is included in the report").[2] In addition, the information should not be presented in a misleading manner. (*People v. Taylor, supra,* at p. 833.)

Here, however, appellant's due process complaint is without merit. His probation report did not contain the kind of bare "rap sheet" information condemned in *Calloway* and *Romero*, but rather information in descriptive, narrative form. While in some respects additional information would have been useful, the report was on the whole adequate and certainly not misleading. Appellant had the right to provide supplementary or rebuttal information at the time of sentencing. In any event, there is no reason to believe that the trial court, in referring to "matters pending in other counties," was referring to any of the materials to which appellant objects. Finally, the evidence even apart from the materials to which appellant objects, fully supports denial of appellant's motion for a mitigated term.

---

[2]Section 12.5 is at present part of judicial standards which are not legally binding. We note, however, that the Legislature has recently amended Penal Code section 1170.3 to mandate "(b) The adoption of rules standardizing the minimum content and the sequential presentation of material in probation officer reports submitted to the court." (Added by Stats. 1979, ch.. 495, eff. Jan. 1, 1980.)

## II

■ Defendant contends that under Penal Code sections 4019 and 2900.5 he is entitled to additional credit for good time/work time while in custody before conviction and sentence to state prison. Similar issues are pending before the Supreme Court in *People* v. *Sage*, Crim. 20997, *People* v. *Brown*, Crim. 20998, and *In re Davis*, Crim. 20999, hearings granted May 30, 1979. Because the Supreme Court will decide the question, we summarily hold that on its face Penal Code section 4019 does not apply to presentence custody of persons convicted of a felony and sentenced to state prison; however, constitutional equal protection of the law principles require that defendant be given credit for good time/work time, if any, pursuant to section 4019.

The judgment of conviction is affirmed and the cause remanded to the superior court for determination of the amount of good time/work time credit to which defendant may be entitled, if any. The superior court is further directed to modify the abstract of judgment accordingly and to transmit it to all appropriate authorities.

Racanelli, P. J., and Newson, J., concurred.

A petition for a rehearing was denied November 28, 1979, and the opinion was modified to read as printed above.