[Crim. No. 36059. Second Dist., Div. One. Aug. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DEAN LUTZ, Defendant and Appellant.

COUNSEL

Thomas J. L. Virant, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TITLE, J.*—

### FACTUAL BACKGROUND

Defendant was charged by information with one count of violating Penal Code section 245, subdivision (a), assault by means of force likely

*Assigned by the Chairperson of the Judicial Council.

to produce great bodily injury. The information further alleged that during the commission of the said offense, defendant inflicted great bodily injury upon the victim, Jessie Robles, within the meaning of Penal Code section 12022.7. The evidence indicated that in an altercation with the victim, a woman with whom defendant was then living, defendant assaulted her violently and then threw her out of the window of their fourth floor apartment. Defendant was convicted of the charge under Penal Code section 245, subdivision (a), and the jury further found that defendant intentionally inflicted great bodily harm on Jessie Robles at the time of the commission of said offense. Defendant appeals from the judgment of conviction.

Defendant refused to be interviewed by the probation officer after his conviction, indicating that he would not accept probation in any event. He further declined to submit any letters to the probation officer from character references on his behalf. Consequently, the probation officer prepared his probation report without the benefit of an interview with defendant, and without the benefit of any character reference letters.

The probation report listed some eleven separate involvements of defendant with the criminal justice system, including one juvenile arrest with a warning and release after two days in custody; one drunk charge, which culminated in a bail forfeiture; one charge involving possession of heroin which was dismissed as a result of plea bargain; seven misdemeanor convictions relating to narcotics, some of which were originally charged as felonies in connection with possession of heroin, and one of which related to the sale of heroin; and one conviction for armed robbery and burglary, which resulted in a state prison sentence, in connection with which defendant was arrested and reincarcerated in the state prison on five different occasions from 1961 to 1969 for violations of parole.

In his probation report, the probation officer set forth among others the following considerations in connection with the sentencing of defendant: that defendant was not eligible or suitable for probation, unless the court wished to invoke Penal Code section 1203, subdivision (e)(3);[1] that there appeared to be aggravating circumstances in that the instant crime involved great violence and a high degree of cruelty; that defendant's prior history had a pattern of violent conduct which indicated a

---

[1]Penal Code section 1203, subdivision (e)(3), provides that probation shall not be granted to any person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which he has been convicted...except in unusual cases where the interests of justice would best be served if the person is granted probation.

serious danger to society; and that defendant's prior convictions were numerous and of increasing seriousness. The probation report concluded with a recommendation that probation be denied and that defendant be sentenced to state prison for the upper term of four years with the additional enhancement of three years because of the infliction of great bodily injury to the victim. Upon the conclusion of the sentencing hearing, the court denied defendant probation, but rejected the recommendation of the probation officer that the upper term be imposed, and sentenced defendant to the middle term of three years in state prison plus the enhancement of an additional three years to be served consecutively pursuant to Penal Code section 12022.7[2] because of the infliction of great bodily injury.

## THE ISSUES

Defendant originally raised three contentions, the first of which was that defendant's sentence was erroneously enhanced pursuant to Penal Code section 12022.7 because the crime was committed prior to January 1, 1979, which was the effective date of that section. However, subsequent to the filing of appellant's opening brief, his counsel ascertained that he was in error, the crime having actually been committed on March 26, 1979, after the effective date of said statute. Consequently, defendant has abandoned that ground of appeal. Two remaining contentions are urged by defendant on this appeal as follows:

1. The court committed reversible error because it considered a biased and incorrect probation report in connection with the sentencing of defendant.

2. The court committed reversible error by instructing the jury with CALJIC No. 2.52, dealing with flight after commission of a crime.

## RESOLUTION OF ISSUES

### THE USE OF THE PROBATION REPORT BY THE COURT IN CONNECTION WITH SENTENCING OF DEFENDANT

### I

■ Since defendant's basic contention is that the court used and considered a probation report which was in fact incorrect and biased

---

[2]Penal Code section 12022.7 basically provides that any person who intentionally inflicts great bodily injury on any person in the commission of a felony shall, in addition and consecutive to the punishment for the felony, be punished by an additional term of three years.

against defendant, our first inquiry is whether the report was in fact biased and incorrect. Defendant specifically complains of general statements in the report to the effect that defendant's prior history showed a pattern of violent conduct, which posed a serious danger to society, and that defendant's prior convictions were numerous and of increasing seriousness. The court has examined the probation report, including the criminal record of defendant enumerated therein, and the following appears to be true: His past history of encounters with the law indicates they are indeed numerous, extending over a period of some 30 years. They also appear to be of increasing seriousness, beginning with a minor juvenile drunk arrest in connection with which defendant was counseled and released after two days of custody, moving through various narcotic offenses, some involving heroin and driving under the influence of drugs or alcohol, an armed robbery and burglary conviction for which defendant served time in the state prison with five arrests and reincarcerations in the state prison for parole violations, and culminating in the present offense, which is indeed a very serious offense. Thus it can reasonably be concluded that it is true, as stated in the report, that defendant was guilty of numerous offenses, some of which were of a nature obviously dangerous to the community and society, and that over a span of many years these offenses have become more serious.

## II

It may be arguable that one general statement contained in the sentencing considerations enunciated by the probation officer is not completely accurate, this being his statement to the effect that defendant's prior history has a pattern of violent conduct. Defendant contends that this statement is open to question on the apparent theory that the only crime potentially involving violent conduct prior to the present offense was the conviction for armed robbery. However, it is also arguable that defendant's propensity toward driving under the influence of alcohol or drugs may constitute violent conduct as well, although this becomes a matter of semantics and a matter of judgment on the part of the probation officer. It amounts to nothing more than a conclusion reached by the probation officer after a consideration of the record before him. One of the functions of a probation officer in submitting such report to the court is to make an analysis and reach some conclusions which may be of assistance to the court in sentencing a defendant. The court may either accept or reject the analysis and conclusions, and in any event the court had before it at the time of sentencing the same factual record as was before the probation officer

when he reached his conclusions. The probation officer's conclusion was not unreasonable, particularly when combined with the violent nature of the present offense.

Even if we assume arguendo that the probation officer was not justified in making said statement regarding a pattern of violent conduct on the part of defendant, can it be seriously contended that defendant has been prejudiced in any way? The answer appears to be no, for the following reasons:

Defendant was given an opportunity to be interviewed by the probation officer and to offer explanations and comments concerning the present offense as well as his prior encounters with the law. Defendant refused to be so interviewed when requested to submit to an interview by the probation officer. It can be readily assumed that with defendant's prior exposure to the law in connection with his prior convictions, he was well acquainted with the purpose and scope of probation reports. Nevertheless, he made a judgment not to cooperate with the probation officer, which he must have known would mean that he would not have the opportunity to make known any facts to the probation officer which might be of assistance to defendant. His failure to take advantage of the opportunity to secure and present letters of recommendation from others to the probation officer must also be noted. In addition, and more importantly, the record of the sentencing hearing indicates that at no time did the defendant or his counsel make any request or move the court in any way to permit them to present material or witnesses to rebut any of the statements in the probation report. Under such circumstances, defendant cannot now complain of any comments in the probation report, as such conduct constitutes a waiver on the part of defendant. (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 725 [135 Cal.Rptr. 392, 557 P.2d 976].)

### III

Even if we were further to assume arguendo that defendant has not waived his right to complain about the language of the report, it is further evident that there is no prejudice to defendant because of the statement concerning a pattern of violent conduct in the past. This is true because: 1. The court did not follow the recommendation of the probation officer that the high term of four years be imposed, but rather imposed the middle term of three years for the violation of Penal Code section 245, subdivision (a). 2. In articulating its reasons for de-

nying probation, the court advanced several specific reasons, none of which related to the alleged violent pattern of defendant. These reasons were articulated by the court as follows: "The defendant is not regarded as suitable for probation in view of his refusal to even talk to the probation officer and indeed because of his long criminal record and the serious nature of this offense and the harm to the victim that was inflicted."

Parenthetically, it should be pointed out that pursuant to Penal Code section 1203, subdivision (e)(3), defendant was not eligible for probation because of the wilful infliction of great bodily injury in the perpetration of the crime. While the section provides that probation can still be granted in unusual cases where the interest of justice would best be served by the grant of such probation, the likelihood that the court would have utilized this section to grant defendant probation under the circumstances is plainly unrealistic. Likewise, while it could be argued that the court might have imposed the lower term in the absence of the language concerning a pattern of violent conduct, this again is completely unrealistic, as no facts are indicated in the record which could have in any way been reasonably used by the court in mitigation under the provisions of Penal Code section 1170.

## IV

■ As articulated by the authorities cited by defendant, the basic evil which should be avoided in probation reports tendered to the court for sentencing purposes is that the reports should not in any way be misleading or inaccurate, should not make reference to arrest records or police contacts without supporting factual information concerning them; and above all should contain accurate and reliable information. (*People v. Chi Ko Wong, supra*, (1976) 18 Cal.3d 698; *People v. Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People v. Tobia* (1979) 98 Cal.App.3d 157 [159 Cal.Rptr. 376]; *People v. Taylor* (1979) 92 Cal.App.3d 831 [155 Cal.Rptr. 62]; *People v. Romero* (1977) 68 Cal.App.3d 543 [137 Cal.Rptr. 675]; *People v. Calloway* (1974) 37 Cal.App.3d 905 [112 Cal.Rptr. 745].) ■ In spite of some generalities in the probation report, it did contain basic factual information, including the charge, disposition and sentence in each item of defendant's prior record, with the possible exception of the minor matter of May 20, 1953, which arose in Nevada, where the charge was not clearly defined, and the item of February 22, 1974, which reflects a "dismissal as a result of a plea bargain." Except for these two items,

there was no showing by defendant that the factual information in the report concerning all of the remaining many items was not completely reliable and accurate. In addition, it should be noted that none of the items listed in the report were purely arrest records or police contacts, but on the contrary related to events consisting of convictions following arrests of defendant.

Under all of the facts and circumstances enumerated above, there was no prejudicial error on the part of the trial court in considering defendant's probation report.

### THE PROPRIETY OF THE INSTRUCTION ON FLIGHT IN ACCORDANCE WITH CALJIC NO. 2.52

I

■ Defendant's contention that the giving of CALJIC 2.52 constituted error appears to be based on his assertion that there was not sufficient evidence of flight to justify the giving of the instruction. It is clear that the instruction may not be given in the absence of some evidence which might reasonably be interpreted as indicating flight by defendant from the scene of the crime. (*People v. Watson* (1977) 75 Cal.App.3d 384, 403 [142 Cal.Rptr. 134].) Thus the basic question for the court is to determine whether sufficient evidence was presented by the People from which the jury could have reasonably inferred that defendant fled after the commission of the crime.

In contending that the evidence did not justify the giving of the instruction on flight, defendant appears to rely on *Watson*, where the court held that it was error to give the flight instruction because the evidence was insufficient to justify an inference of flight. However, the only evidence presented by the People in *Watson* was that the defendant was arrested some two days after the commission of the crime, miles away from the scene of the crime, which patently would be insufficient in and of itself to justify any reasonable inference of flight. This must be contrasted with *People v. Cannady* (1972) 8 Cal.3d 379 [105 Cal.Rptr. 129, 503 P.2d 585], 391, where the defendants in a charge of assault on a fellow prisoner had left the scene of the assault and the instruction on flight was given. Defendants contended in *Cannady* that the instruction was improper in view of the fact that they were going in the direction of a guardpost in the prison when apprehended, which would presumably

negate any possible argument of flight, but this argument was rejected by the Supreme Court on the theory that the jury could reasonably infer flight from the fact that they were going away from the scene of the crime at the time they were apprehended. The court also pointed out that flight requires neither the physical act of running nor the reaching of a far away haven in order to justify the instruction.

## II

The testimony indicated that within ten minutes after the victim was allegedly thrown by defendant from the window of his apartment on the fourth floor of the apartment building, police officers arrived on the scene and went to defendant's apartment with the apartment house manager. They found the door locked, and when the officers were let into the apartment by the manager, the defendant was not there. This was shortly after the noon hour, and the defendant did not return to the apartment until sometime later where he was arrested between 8 p.m. and 9 p.m. The People contend that these facts are sufficient to justify the giving of the instruction on flight pursuant to CALJIC No. 2.52, and the court has concluded that the giving of the instruction was proper. ■ The issue as to whether a defendant's conduct constitutes a flight within the meaning of the instruction is a question of fact to be determined by the jury. (*People* v. *Caldera* (1959) 173 Cal.App.2d 98, 101 [342 P.2d 945].) ■ It appears clear that if the jury believed that defendant disappeared from the apartment immediately after the injury to the victim, this would be a fact from which the jury would be entitled to infer that defendant fled from the scene, and could be used by the jury in light of all other facts in determining the question of defendant's guilt or innocence. Consequently, defendant's contention that the instruction was error is rejected.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 22, 1980.